**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Frank FEICHTINGER, Defendant– Appellant.**

No. 96–2375.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 5, 1996.

Decided Feb. 4, 1997.

Robert Lee Garrison (argued), Office of the U.S. Attorney, Criminal Div., Fairview Heights, IL, for Plaintiff–Appellee.

Renee E. Schooley (argued), Office of the Federal Public Defender, East St. Louis, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and ESCHBACH and EVANS, Circuit Judges.

EVANS, Circuit Judge.

Frank Feichtinger has a common complaint: he thinks his sentence is too long. His problem is, however, that before he can convince us to listen to his beef, he must hurdle his plea agreement, in which he waived his right to appeal.

Feichtinger and another man concocted a plan to break into and rob two banks in Belleville and Collinsville, Illinois. They intended to use liquid helium and an oxyacetylene torch to crack open the bank vaults. To carry out their plan they stole military equipment from an Illinois Army Reserve Center. Among the items stolen were night vision goggles, hand-held radios, bolt cutters, 26 chemical protective masks, compasses, watches, sleeping bags, Kevlar helmets, a practice claymore mine, and—astonishingly—a two-and-one-half ton cargo truck. One vehicle apparently not being enough, they obtained another Army truck from the Jefferson Barracks in Missouri. They drove this truck to Illinois. In all, the military equipment they snatched was worth almost a half million dollars.

Not surprisingly, on January 31, 1994, they were charged in federal court with theft of military equipment and concealing stolen military equipment. On May 3, 1994, a five-count superseding indictment was filed against Feichtinger. It repeated the original charges and added two more—conspiracy to commit bank robbery and the interstate transportation of stolen government property. Feichtinger's trial was scheduled to begin on October 11, 1994.

To understate, Feichtinger failed to appear for trial. What he did instead was to flee in dramatic fashion. He faked his own suicide by leaving his abandoned car and a suicide note on a Mississippi River bridge. The suicide note was a doozy. It was handwritten, 15 pages long, quoted Mark Twain, lamented "My battle is over now I must expire," and repeated "[I'm] dead as a doornail" 28 times.

But surprise surprise. Unlike Marley's ghost, Feichtinger was not "dead as a doornail" despite his repetitious assertions that he was. Feichtinger, it turned out, was alive and kicking in Arizona, where he was nabbed 10 months later in August of 1995. Upon his arrival back in Illinois, a second superseding indictment was returned, with a sixth count for failure to appear for trial added to the old charges.

On February 29, 1996, Feichtinger entered—what a temptation to say leaped (though that would not be accurate)—into a

plea agreement, in which he waived his right to appeal. On May 21, 1996, Judge William L. Beatty sentenced him to 37 months imprisonment on counts 1 through 5 and a 6–month consecutive term on the failure-to-appear count, giving him a grand total sentence of 43 months.

Feichtinger filed an appeal, alleging that the sentence on count 6 was an improper application of § 2J1.6 of the United States Sentencing Guidelines. In response, the government called our attention to the waiver of the right to appeal, set out in the plea agreement. Feichtinger replied that the waiver does not preclude his appeal because the government, in fact, breached the plea agreement and because a waiver does not rule out an appeal based on a incorrect application of the guidelines.

His second argument need not detain us long. If Feichtinger is right, what, we wonder, does a waiver waive? Most sentencing appeals involve what are alleged to be incorrect applications of the guidelines. We have, in fact, upheld waivers even in situations in which the court has departed upward from the guidelines. *United States v. Wenger*, 58 F.3d 280 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 349, 133 L.Ed.2d 245 (1995).

■ In support of his position, Feichtinger relies on *United States v. Schmidt*, 47 F.3d 188 (7th Cir.1995), for the proposition that a waiver of a right to appeal is subject to exceptions. True, but in *Schmidt,* even though the government did not raise the waiver issue, we relied on a waiver of appeal to dismiss an appeal of a sentence alleged to involve an improper enhancement under the guidelines. We noted that the right to appeal is a statutory right, and like other rights—even constitutional rights—which a defendant may waive, it can be waived in a plea agreement.

■ A waiver of appeal rights can only be upheld if it is voluntarily made. And it will not be enforced if a sentencing judge relied on impermissible facts (such as a defendant's race) or if the judge sentenced a defendant in excess of the statutory maximum sentence for the crime committed. But an improper application of the guidelines is not a reason to invalidate a knowing and voluntary waiver of appeal rights. A defendant who pleads guilty with an appeal waiver can, of course, inoculate himself against a bizarre interpretation of the guidelines by offering his plea under Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure. Feichtinger has not done that.

■ Feichtinger's other argument is that the government breached the plea agreement, thus violating his due process rights and rendering the agreement invalid. His argument centers on the provision in the agreement that at sentencing the government would recommend a three-level reduction in his offense level for acceptance of responsibility. Feichtinger says the government failed to keep this part of the bargain.

Let's look at what happened during the sentencing proceeding to see if this claim has legs. It seemed clear from the outset that the district judge, Judge Beatty, was skeptical of the request for a reduction, as was the probation officer assigned to Feichtinger's case. The calculations in the presentence report did not include a reduction for acceptance of responsibility. At sentencing, Feichtinger's attorney argued first that if the defendant were not given a reduction, he would be punished three times for his failure to appear. Presumably the first was in being charged. The second was that he was given an enhancement for, as defense counsel put it, "obstruction of justice for his conduct on the failure to appear." The third, of course, was the failure to obtain the reduction for acceptance of responsibility.

Judge Beatty did not agree. He saw the obstruction and the failure to appear as two different things. In his view, Feichtinger could have decided to watch television rather than going to court; that would be failing to appear. Faking a suicide and taking off for Arizona went a bit beyond mere failure to appear. Judge Beatty also explained that acceptance of responsibility means more than just showing up: "Acceptance of responsibility means to me that you come in and you appear when you're supposed to appear and you don't go messing around trying to cover up things."

Defense counsel persevered in her attempt to convince the judge that Feichtinger should receive credit for acceptance of responsibility. Finally, as if sensing that a retreat of some sort might be wise, she said, "It seems to me that if the Court is not going to give him the full three points off that he should at least get something off for pleading guilty to the failure to appear." Her retreat was a tactical choice. If it is clear that a judge thinks an attorney is asking too much, it is wise to modify the request in the hope of receiving something, if not all that one wants.

Even after the modification of the request, Judge Beatty remained unmoved. He pointed out that Feichtinger's sentence was less than that of many people who commit "milder offenses." Then he said, "Maybe the remedy then is to depart upward rather than say he doesn't get the three points for acceptance of responsibility. I just have a difficult time saying that we're going to give this man credit for acceptance of responsibility on any charge after reading all these reports."

To reiterate, to this point in the sentencing proceeding, the judge has implied that if he gave a reduction for acceptance of responsibility, he might then depart upward from the guidelines, certainly something of a wild card. In addition, defense counsel had strategically (and wisely, we think) backed off her request for a three-point reduction, and asked for "something off."

It is only at this point that Judge Beatty turned to the government, asking, "What do you have to say?"

No doubt, the government attorney wanted to say, "Nothing, your Honor." But instead, he picked up where defense counsel left off, conceded that on the original charge Feichtinger was not entitled to a reduction, but maintained that on the "failure to appear, he certainly did to my eyes accept responsibility ... in a timely fashion.... I don't know how I can stand before you with a straight face and say he didn't accept responsibility on the new charge." When questioned further, the government did, as Feichtinger alleges, argue that he was perhaps not entitled to a three-point reduction. But at the same time, the government persevered in its request for a two-point reduction.

In maintaining that position, the government found itself on the receiving end of some criticism from the judge. Ultimately, the reduction was denied, with the court again stating that if he had granted the reduction, he might have considered departing upward.

To say that the government breached the plea agreement when it modified its recommendation from a three-to a two-point reduction in this situation is ungrateful, at best. The transcript of the hearing shows that even after the judge made his unwillingness to grant the reduction strikingly clear, the government attempted to obtain some sort of reduction. That the government and defense counsel were perceived to be in agreement on this issue can be inferred from Judge Beatty's comment that "[b]oth of you may be correct." It is true that the nature of what the parties were requesting was modified by the realities of the situation. But it must be noted that defense counsel was the one who first recognized those realities and modified her request. After she conceded that maybe a three-level reduction was not appropriate, but that "something less" was, it would be weird and overly literal, at best, for the government then blindly to recommend a three-level reduction.

Our decision today is highly dependent on the facts of this case. We in no way are indicating that in all cases the government can promise one thing but then do less. Our decision is a recognition that in some instances, discretion is the better part of valor, and if the government, in effect, does a little less than it promised, but actually does something which may be more likely to yield good results for a defendant, then it has not breached its end of a plea agreement. In the circumstances of this case, there is no breach of the plea agreement which would invalidate it and release Feichtinger from the waiver of his right to appeal. This appeal is dismissed.