**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Marcia G. WOOLLEY, Defendant–Appellant.**

No. 96–1806.

United States Court of Appeals, Seventh Circuit.

Argued April 22, 1997.

Decided Aug. 18, 1997.

Jeffrey B. Lang (argued), Office of the United States Attorney, Rock Island, IL, for Plaintiff–Appellee.

Steven Shobat (argued), Chicago, IL, for Defendant–Appellant.

Before COFFEY, KANNE and ILANA DIAMOND ROVNER, Circuit Judges.

COFFEY, Circuit Judge.

Defendant-appellant Marcia Woolley was charged with one count of aiding and abetting a felon in obtaining a firearm, in violation of 18 U.S.C. §§ 2, 922(g)(1). The indictment charged that, on or about January 21, 1995, Woolley assisted her husband Martin, a convicted felon, in purchasing a handgun in Henry County, Illinois. Thereafter, on November 3, 1995, Woolley, represented by counsel, pled guilty to the charge in the indictment pursuant to a written plea agreement. Under the terms of the plea agreement, the Government reserved the right to request, and in fact did request, an upward departure in Woolley's sentence. With an upward departure, Woolley could have received up to the statutory maximum of 120 months. At the sentencing hearing, the judge granted the Government's request and departed upward, sentencing the defendant to a term of ninety-six months.

The plea agreement also contained a sentence appeal waiver, as well as a waiver of rights under 42 U.S.C. § 2255. Notwithstanding this waiver, Woolley has filed an appeal, in which she challenges the upward departure and argues that she received ineffective assistance of counsel. The Government in response filed a motion to dismiss the appeal based on the sentence appeal waiver.[1] We dismiss the appeal.

---

1. This court ruled previously that the motion to dismiss would be taken with the case for determination by the merits panel.

## I. FACTUAL BACKGROUND [2]

Woolley and her husband Martin owned a tattoo shop in Kewanee, Illinois. On January 20, 1995, Marcia asked James Rodgers (Rodgers), a friend of hers, if he would purchase a handgun for the Woolleys, stating that she and Martin needed a gun for protection both at the tattoo shop and at home.[3] As a matter of fact, Marcia Woolley admitted in a taped discussion with Illinois authorities that the real reason the Woolleys wanted to purchase a gun was to facilitate their purchase and transportation of drugs from Florida to Illinois for resale. Rodgers agreed to purchase the handgun for the Woolleys, and the three of them went to a local gun shop the next day. Martin Woolley picked out a handgun and ammunition, and Marcia paid for them with cash.

A few weeks later, on February 20, 1995, Marcia and Martin spent a large portion of the day drinking at "Phylly's Cue and Brew," a bar located in Kewanee. At approximately 10:00 p.m., after all of the patrons had departed except for the Woolleys and two employees, a bartender and a waitress, Martin, who was carrying the handgun in his pants, opened fire, shooting and killing both the bartender and waitress. Thereafter, Martin went behind the bar, emptied the cash register, took two bags of money from a cabinet beneath the bar, exited the tavern and returned with his wife to their Kewanee home. Martin hid the money in a wall in their house, and dropped the gun in a freezer located in a garage a few houses away. Early the next morning, the police arrived and inquired of both Martin and Marcia whether they knew anything about the murders, and both denied any knowledge. Later that afternoon, Marcia and Martin were taken to the Kewanee Police Department for questioning, at which time Marcia stated that Martin had committed the murders. She denied knowing in advance of his plans to rob Phylly's and fatally shoot the two people. Martin later confessed to the murders, and Marcia admitted, in a taped statement, that she knew at the time they purchased the gun that Martin was a convicted felon and was thus barred from legally owning a handgun.

Martin Woolley was charged with and convicted of two counts of murder for the killing of the bartender and waitress. He was sentenced to death for the double homicide.[4] Marcia Woolley was charged by Illinois authorities with obstruction of justice, based on her false statements to Kewanee police officers concerning her alleged lack of knowledge about the killings. She pled guilty, served approximately three months of an eighteen-month sentence, and was released from custody, only to be re-arrested for the crime referred to herein.[5]

Assisted by counsel, Marcia entered into a written plea agreement which specifically provided in part that the Government would have the right to seek an upward departure in Marcia's sentence,[6] and also allowed Woolley to seek a downward departure. The plea agreement also contained the aforementioned waiver of Marcia's right to appeal her sentence. The appeal waiver read as follows:

---

2. This summary is taken from the Presentence Investigation Report ("PSR"). Woolley objected to certain facts contained in the PSR, but the district judge adopted the PSR's factual findings at Woolley's sentencing hearing.

3. Rodgers testified at the sentencing hearing that Marcia told him there were "shady characters" coming around their house and the tattoo shop when the Woolleys were not there.

4. Martin Woolley is currently on death row in Illinois. He was also sentenced to thirty years incarceration for robbery; thirty years for armed violence with a weapon; and five years for unlawful use of a firearm by a felon.

5. Woolley was released from state custody on August 3, 1995, and was thereafter arrested for aiding and abetting a felon in obtaining possession of a firearm.

6. The plea agreement provided:

> With respect to aggravating factors relevant to the issue of sentencing, the parties hereby agree that the United States reserves the right to request that the court sentence the defendant to a term above the range established for her crime under the applicable provisions of the *United States Sentencing Guidelines and Policy Statements*. In other words, it is agreed that the United States specifically reserves the right under Part K of the [G]uidelines to move this court to depart upwards in determining the defendant's sentence.

App.B, p. 7.

A. The defendant fully understands that Section 3742 of Title 18 of the United States Code provides for appeal by a defendant of a sentence under certain circumstances, and further that she may give up or waive this right to appeal her sentence as a term of this plea agreement.

B. Knowing this, the defendant hereby waives any and all rights conferred by 18 U.S.C. § 3742 to appeal her sentence on any grounds, including the manner in which the court applies the *United States Sentencing Guidelines and Policy Statements* in determining her sentence.

C. The defendant further fully understands that Section 2255 of Title 28 of the United States Code and related laws provide for the challenge by a defendant of her conviction and sentence under certain circumstances, and further that she may give up or waive this right to challenge her conviction and sentence as a term of this plea agreement.

D. Knowing this, the defendant hereby waives any and all rights conferred by 28 U.S.C. § 2255 and related laws to challenge her conviction and sentence on any grounds in any post-conviction proceedings.

App.B, p. 10.

The probation officer in the PSR calculated Woolley's Adjusted Offense Level at fifteen and found her Criminal History Category to be III; thus, her Guideline sentence range was twenty-four to thirty months. At sentencing, the Government moved for an upward departure from the Guideline sentence range to the statutory maximum of 120 months, based on § 5K2.1 of the Guidelines, which states that an upward departure is appropriate if death results from the commission of the offense. The defendant's counsel sought a downward departure, arguing that Marcia Woolley had been coerced by Martin

into assisting him in obtaining the handgun. The trial judge, after reviewing the PSR and hearing the evidence presented at the sentencing hearing, denied the defendant's request for a downward departure and agreed with the Government that an upward departure was in order. The judge sentenced Woolley to a term of ninety-six months.

## II. ISSUES

Woolley's appellate brief raises five issues challenging her sentence (the plea colloquy whereby the district court accepted her guilty plea) and alleging that her trial counsel provided ineffective assistance. Initially, we address the Government's motion to dismiss this appeal based upon the waiver of appeal rights Woolley agreed to and signed as part of her written plea agreement. Since we hold that the appeal waiver is valid, there is no need to address the merits of Woolley's sentencing claims.

## III. DISCUSSION

The Government has moved to dismiss Woolley's appeal, arguing that, as part of her written plea agreement, she waived her right to appeal. It is well-settled in this Circuit, as well as in virtually every circuit that has considered the question,[7] that defendants may waive their right to appeal as part of a written plea agreement, and we have consistently upheld valid appeal waivers and dismissed the appeals taken in contravention. *See United States v. Feichtinger*, 105 F.3d 1188 (7th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 2467, 138 L.Ed.2d 223 (1997); *United States v. Ogden*, 102 F.3d 887 (7th Cir.1996); *United States v. Wenger*, 58 F.3d 280 (7th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 349, 133 L.Ed.2d 245 (1995); *United States v. Schmidt*, 47 F.3d 188 (7th Cir. 1995).[8] Indeed, "the right to appeal is a

7. *See generally* Robert K. Calhoun, *Waiver of the Right To Appeal*, 23 HASTINGS CONST. L.Q. 127, 135 n. 41 (1995) ("Appeal waivers have been upheld in all but one of the federal circuits which have considered them.").

8. One reason for permitting criminal defendants to agree to waive their rights as a part of a plea negotiation process was articulated by the Supreme Court in *United States v. Mezzanatto*, 513 U.S. 196, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995):

> "[I]f the prosecutor is interested in 'buying' the reliability assurance that accompanies a waiver agreement, then precluding waiver can only stifle the market for plea bargains. A defendant can 'maximize' what he has to 'sell' only if he is permitted to offer what the prosecutor is most interested in buying."

statutory right, and like other rights—even constitutional rights—which a defendant may waive, it can be waived in a plea agreement." *Feichtinger,* 105 F.3d at 1190. For an appeal waiver to be valid, it "must be express and unambiguous," *United States v. Hendrickson,* 22 F.3d 170, 174 (7th Cir.1994), and the record must clearly demonstrate that it was "made knowingly and voluntarily." *United States v. Agee,* 83 F.3d 882, 885 (7th Cir.1996) (citing *Wenger*); *Schmidt,* 47 F.3d at 190. Finally, a waiver of the right to appeal does not completely foreclose review of a sentence under all circumstances. As we observed in *Schmidt,* notwithstanding a valid appeal waiver, "a defendant could appeal his sentence if the trial court relied on a constitutionally impermissible factor[.]" 47 F.3d at 190; *see also Feichtinger,* 105 F.3d at 1190. To determine whether the defendant's appeal waiver is valid, we look to the content and the language of the plea agreement itself and refer to the colloquy between the defendant and the judge if necessary. As we stated in *Wenger*:

> Most waivers are effective when set out in writing and signed[.] ... Waivers of appeal must stand or fall with the agreements of which they are a part. If the agreement is voluntary, and taken in compliance with Rule 11, then the waiver of appeal must be honored. If the agreement is involuntary or otherwise unenforceable, then the defendant is entitled to appeal.

58 F.3d at 282; *see also Schmidt,* 47 F.3d at 190. Woolley does not dispute that she signed the written plea agreement containing the appeal waiver; nor does she claim that she was illiterate or was otherwise unable to read and understand the agreement's terms. Rather, she argues that she did not enter into it voluntarily because her lawyer failed to discuss the appeal waiver with her prior to the guilty plea hearing. Thus, we examine the record as a whole to determine whether Marcia Woolley voluntarily and knowingly waived her right to appeal.

513 U.S. at 207, 115 S.Ct. at 805 (permitting defendant to waive protection of Fed.R.Evid. 410 and Fed.R.Crim.P. 11(e)(6) as part of plea agreement).

## A. The Rule 11 Colloquy at the Time Woolley Entered Her Guilty Plea

"Federal Rule of Criminal Procedure 11 dictates that before accepting any guilty plea, the trial court must discuss with the defendant a host of issues, including the waiver of certain constitutional rights, and must ensure that the plea is voluntary." *Agee,* 83 F.3d at 884 n. 1 (7th Cir.1996). Rule 11 "require[s] that a defendant's guilty plea be [made] voluntarily (i.e., not induced by threats or promises of any kind). Thus, the defendant must understand the [nature and the] elements of the crime to which he is pleading, as a guilty plea is an admission of all of the elements of the crime." *United States v. Ranum,* 96 F.3d 1020, 1024 (7th Cir.1996) (citations omitted). Even though some circuits have held that, when accepting a plea agreement which includes a sentence appeal waiver, the trial judge must conduct a specific colloquy with the defendant addressing the waiver,[9] the law of this Circuit is clear that the court is not required to conduct a specific dialogue with the defendant concerning the waiver, so long as the record contains sufficient evidence for the court to determine if the defendant has knowingly and voluntarily waived his or her right to appeal. *Agee,* 83 F.3d at 884 (citing *Wenger,* 58 F.3d at 282–83).

In this case, the record reveals that the trial judge conducted an in-depth inquiry concerning Woolley's understanding of both the plea agreement and the appeal waiver. The district judge specifically pointed out to Woolley the waiver provision contained within the plea agreement. He inquired of her if she had read the waiver and understood its terms (she stated that she did), and he informed her that she was giving up "any and all rights to appeal" by agreeing to the waiver. He next asked Woolley if she had any questions about the waiver, and she replied that she did not.

The experienced trial judge went beyond merely questioning Woolley herself about the

9. *Agee,* 83 F.3d at 886 (citing *United States v. Bushert,* 997 F.2d 1343, 1351–52 (11th Cir.1993); *United States v. Marin,* 961 F.2d 493, 496 (4th Cir.1992)).

waiver; he also inquired of her lawyer if he had discussed the waiver with Woolley. When the attorney responded that he had not, the judge prudently adjourned the hearing and gave the attorney and his client additional time to confer to ensure that Woolley fully understood that she was giving up the right to appeal her sentence. After a short recess in the proceedings, the colloquy between the judge and the defendant resumed, and the trial judge recited again, for the benefit of both Woolley and her attorney, that the statutory maximum for the charge she was facing was ten years. Furthermore, the judge specifically asked Woolley whether she had any questions concerning the possible maximum sentence, and Woolley replied that she did not.

The judge also asked Woolley's lawyer what the "worst case scenario" was from a sentencing standpoint that he had discussed with his client. Woolley's attorney stated that, although Woolley's pre-departure Guideline calculation could provide for a sentence of around twenty-six months, he had informed her of the U.S. Attorney's Office's intention to seek an upward departure to the statutory maximum. At this point, the judge, upon realizing that the Government was seeking a substantial upward departure from the Guideline range, discussed with both Woolley's counsel and the Assistant U.S. Attorney ("AUSA") in Woolley's presence the magnitude of the upward departure. At that time, the following colloquy took place between the judge and Woolley:

> [THE COURT]: The reason we're having this discussion, sounds like there's quite a variance here in terms of what the possibilities are in terms of your sentence and it sounds like the guidelines could come in as low as 26 months *or, if the Court were to decide to depart upward under special circumstances, theoretically you could receive up to the 10 year statutory maximum sentence. So do you understand that is the worst case scenario?*
>
> [DEFENDANT WOOLLEY]: *Yes.*
>
> [THE COURT]: Do you also understand that after your guideline range has been determined, the Court has the authority in some circumstances to depart from the guidelines and impose a sentence that is more severe or less severe than the sentence called for by the guidelines?
>
> [DEFENDANT WOOLLEY]: Yes.
>
> \* \* \*
>
> [THE COURT]: Do you understand that by entering into this agreement and entering a plea of guilty, you will have waived or given up your right to appeal any part of this sentence? Do you understand that?
>
> [DEFENDANT WOOLLEY]: Yes.

 As the foregoing demonstrates, the trial judge in this case was very careful to provide sufficient time and an opportunity for Woolley and her counsel to confer concerning the sentence appeal waiver, and the judge accepted her guilty plea *only* after making a complete record demonstrating that the defendant did in fact understand the waiver as well as the terms and ramifications of the sentence imposed. Thus, as was the case in *Schmidt*, "[t]he guilty plea hearing could not be more clear in reflecting that it was conducted in full accordance with Fed. R.Crim.P. 11, and reveals that [Woolley] knowingly and voluntarily waived [her] right to appeal [her] ... sentence." [10] 47 F.3d at

---

10. Woolley claims in her brief that the guilty plea colloquy failed to establish the factual basis for her guilt on the aiding and abetting charge. She argues that, since she stated during the colloquy that she did not want Martin to have a gun, but felt there was no way for her to stop him, the colloquy showed that she did not share a "community of [unlawful] intent" with Martin. *United States v. Torres,* 809 F.2d 429, 433 (7th Cir.1987) (internal quotation marks omitted). Woolley's argument mistakenly assumes that the district judge was limited to only her specific statements when determining whether a factual basis for her plea existed. It is well-settled that "the court may find the factual basis [for the plea] in any-

thing that appears *on the record." United States v. Fountain,* 777 F.2d 351, 356 (7th Cir.1985); *see also United States v. Ray,* 828 F.2d 399, 405 (7th Cir.1987).

After Woolley claimed that she did not want to assist Martin in purchasing a handgun, the judge asked the AUSA to provide an additional factual basis for the plea. The AUSA, based on the written plea agreement and a taped discussion between Woolley and Illinois state authorities which occurred while she was being questioned about the double homicide, proffered that Woolley knew her husband was a convicted felon and could not possess a handgun. Also in the taped

191. As noted *supra*, Woolley nowhere claims that she was illiterate or otherwise unable to understand the plea agreement or sentence appeal waiver (she completed high school and had received some postsecondary vocational training), and we are convinced from our review of the record that her guilty plea and appeal waiver were entered into knowingly and voluntarily.

### B. Woolley's Attempt to Circumvent the Plea Agreement by Alleging Ineffective Assistance of Counsel

Notwithstanding the fact that the record clearly demonstrates that "after a thorough colloquy with the district judge, [Woolley] again expressly waived [her] right to appeal," [11] Marcia Woolley has appealed. She claims that she is entitled to have this court hear the merits of her appeal because her counsel provided inadequate assistance in advising her to accept the appeal waiver as part of the plea agreement. At oral argument, her counsel acknowledged that he was familiar with our oft-repeated admonition that "[t]he preferred method for raising a claim of ineffective assistance of counsel is either by bringing a motion for new trial or a request for collateral relief under 28 U.S.C. § 2255." [12] *United States v. Wiman*, 77 F.3d 981, 988 (7th Cir.1996). The reason we discourage bringing ineffective assistance claims on direct appeal is because "such claims are very unlikely to find any factual support in the trial record and an adverse determination on direct appeal will be *res judicata* in any subsequent collateral attack." *United States v. Cooke*, 110 F.3d 1288, 1299 (7th Cir.1997). Further, the bringing of such claims on direct appeal can result in a waste of a court's judicial resources, as we often examine an appellant's ineffective assistance arguments, only to conclude that the record is insufficient for us to even rule on whether the record is sufficient to establish the appellant's claim. *See United States v. Morgano*, 39 F.3d 1358, 1375 (citations omitted); *see generally Guinan v. United States*, 6 F.3d 468, 474 (Easterbrook, J. concurring) ("Rules of procedure should be designed to induce litigants to present their contentions to the right tribunal at the right time. For ineffective assistance, the court of appeals on direct appeal is the wrong tribunal at the wrong time."). At oral argument, in response to a question from the bench, counsel made clear that he wished to proceed with the ineffective assistance claim on direct appeal, and the Government's lawyer likewise requested that we rule at this time (though he candidly conceded that, if he were in his opponent's position, he would request that the court dismiss the appeal). Thus, in keeping with our rule that we will consider ineffective assistance claims on direct appeal upon the request of both parties,[13] and since it is nec-

interview, Woolley admitted that she discussed with Martin his need for a gun so they could purchase narcotics in Florida for resale. The AUSA further proffered that Marcia and Martin discussed the purchase of the gun with their friend Rodgers, and when the three went to pick out the gun, Marcia paid for the gun with cash. When asked if she agreed with the statement presented by the AUSA, Woolley replied in the affirmative. From this, the district court could readily conclude that Woolley acted voluntarily and possessed the necessary intent to assist Martin in acquiring a handgun.

11. *Ogden*, 102 F.3d at 888.

12. Woolley's counsel on appeal is not the counsel who represented her at the entry of her plea of guilty.

13. *See Cooke*, 110 F.3d at 1299; *United States v. Allender*, 62 F.3d 909, 913 (7th Cir.1995), *cert. denied*, — U.S. —, 116 S.Ct. 781, 133 L.Ed.2d 732 (1996); *United States v. South*, 28 F.3d 619, 629–30 (7th Cir.1994). One reason a defendant might opt to proceed with an ineffective assistance claim on direct appeal was suggested by this court in *Guinan v. United States*, 6 F.3d 468, 471 (7th Cir.1993): "[T]he defendant might be confident that the ineffectiveness of the lawyer's assistance was obvious from the transcript and might not think that the lawyer who had disserved him (or anyone else) would have anything helpful to say at an evidentiary hearing." Further, as the *Guinan* court noted, a litigant who chooses not to pursue an ineffectiveness claim on direct appeal runs the risk that he will be deemed to have waived the right to pursue the claim on collateral review, if the claim was not one which "reasonably appeared," at the time of the direct appeal, would require the production of substantiating extrinsic evidence. *Guinan*, 6 F.3d at 472; *see, e.g., McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir.1996) ("Because [petitioner] offers no material extrinsic evidence in support of his ineffective assistance of counsel claim and he had different counsel on appeal, his is not the type of claim properly raised for the first time in a § 2255 motion."). When ques-

essary to the resolution of the Government's motion to dismiss, we address Woolley's argument that her counsel was ineffective in advising her to accept the sentence appeal waiver as part of the plea agreement.

To prevail upon an ineffective assistance claim, Woolley must establish both that her counsel's performance "fell below an objective standard of reasonableness and that the deficient performance prejudiced the outcome of the proceedings." *Cooke*, 110 F.3d at 1299 (citing *Strickland v. Washington*, 466 U.S. 668, 688, 691–92, 104 S.Ct. 2052, 2064, 2066–67, 80 L.Ed.2d 674 (1984)); *see also Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985). To demonstrate prejudice arising from counsel's allegedly-deficient performance which led to the entry of a guilty plea, a defendant must establish that, but for counsel's erroneous advice, the defendant would not have entered the guilty plea. *See McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir.1996). Woolley claims that her counsel rendered ineffective assistance in failing to discuss the appeal waiver with her until the point during the change of plea hearing when the judge specifically stopped the proceedings so that Woolley and her counsel could confer about the waiver. Woolley further contends that she did not receive consideration in the form of concessions from the Government for her agreement not to appeal her sentence.

Woolley's first argument is that, since her counsel failed to discuss the appeal waiver provision of the plea agreement with her prior to the change of plea hearing, she was not fully informed of, and did not participate in, the decision to accept that provision. In support, she cites *Johnson v. Duckworth*, 793 F.2d 898 (7th Cir.1986), where we held that "a defendant must be involved in the

decision-making process regarding the [plea] agreement's ultimate acceptance or rejection." 793 F.2d at 902. Examination of the plea hearing transcript, as quoted *supra*, makes clear that, when the trial judge learned that Woolley and her counsel had not specifically conferred about the appeal waiver, he adjourned the hearing to give them a chance to discuss the appeal waiver in order that she might be made fully aware of and understand its terms. Upon completion of Woolley's and her counsel's conference concerning the appeal waiver, the district judge confirmed for Woolley and her counsel that the statutory maximum for Woolley's crime was ten years. The judge then *specifically* asked Woolley if she had "any questions at all" about the appeal waiver, and Woolley responded, "No. That's correct." Later in the hearing, the judge again reiterated to Woolley that, if he decided to depart upward, he could impose a maximum sentence of ten years, although on the other hand her sentence could come in as low as twenty-six months under the Guidelines. Woolley once again stated that she understood this. Finally, the judge again asked the defendant if she understood that she was giving up her right to appeal as part of the plea agreement, and the defendant responded in the affirmative. In sum, the record clearly reflects that, contrary to Woolley's assertions, she did in fact have an opportunity to confer with her lawyer and participate in the decision to accept or reject the appeal waiver. Thereafter, in response to an in-depth interrogation by the judge concerning her various rights and options, she specifically and repeatedly stated that she understood the waiver and agreed to its terms. Thus, we refuse to conclude that the defendant was not sufficiently involved in the decision-making process concerning the waiver.

---

tioned at oral argument, Woolley's counsel stated that he opted to bring the ineffective assistance claims on direct appeal because the appeal waiver, by its terms, applied to § 2255 challenges as well as direct appeals.

As the Government acknowledged in its brief, *United States v. Henderson*, 72 F.3d 463 (5th Cir.1995), holds that an appeal will not be dismissed when the defendant has made a motion to withdraw her guilty plea pursuant to Fed. R.Crim.P. 32(e) prior to sentencing based on

alleged ineffective assistance of counsel, but will instead review the denial of the motion to withdraw for an abuse of discretion. 72 F.3d at 465. Woolley made no such motion at any time, and in fact stated when she entered her guilty plea that she was satisfied with the representation her trial counsel had provided for her. Further, when the trial judge provided Woolley with her right of allocution at the close of the sentencing hearing, she did not express any dissatisfaction with her counsel's performance.

■ With respect to Woolley's claim that she failed to receive consideration on her sentence for the appeal waiver, the record reveals that as part of the on-going plea negotiations, the Government made a number of factual concessions in the plea agreement. For example, while it was the Government's position that Marcia Woolley herself approached Rodgers about purchasing a handgun for the Woolleys, as a concession the plea agreement merely stated that Marcia "*overheard Martin Woolley tell Rodgers that they needed a gun.*" App.B, p. 4. In fact, the Government made additional concessions on the day of the change of plea hearing, which were penciled in to the agreement.[14] Further, the Government agreed to recommend a three-level downward adjustment for acceptance of responsibility, and the Government also agreed not to bring any additional charges (except for any crime of violence) which arose from the series of events leading up to the plea which might be discovered in the future. The point of the factual concessions in the plea agreement was to assist her in her request for a downward departure and to portray the facts in a light more favorable to Woolley's claim that she did not assist Martin in obtaining the gun.

■ The plea agreement did not, however, prevent the Government from challenging the facts set forth in the agreement at the sentencing hearing, and the Government in fact did so. For example, the Government called Rodgers to the stand, and he testified that Marcia, as opposed to Martin, initially approached him about purchasing a gun for the Woolleys. The Government argued that the district judge should depart upward to the statutory maximum of 120 months because Woolley knew that her husband was a convicted felon and was purchasing the gun for protection when travelling to Florida to purchase narcotics for resale in Illinois, and two deaths resulted from her assistance to Martin in obtaining the gun. The Government argued that the judge should depart upward under § 5K2.1 of the Guidelines, which authorizes an upward departure when death results from the commission of the offense. Woolley, by contrast, argued for a downward departure, claiming that she was physically abused by Martin and that he coerced her into assisting in the gun's procurement.[15] The judge ultimately agreed with the Government. He found, contrary to what was set forth in the plea agreement, that it was Marcia Woolley, not her husband Martin, who in fact approached Rodgers, and discussed and arranged for the purchase of the gun. The judge found that, by seeking

14. There were three such changes made on the day of the hearing. First, stipulation number six, which had stated that the Woolleys had discussed how *they* needed a gun so they could go to Florida to purchase drugs, to state that they discussed how *he* (Martin) needed a gun. Second, stipulation number seven, which had read that Marcia and Martin had discussed how *they* could make money from selling drugs, was changed to read that *he* (Martin) could make money from the sale of drugs. Finally, stipulation number fourteen, which had stated that Martin *and Marcia* had picked out the gun, was changed so that the reference to Marcia picking out the gun was deleted.

15. In her brief, Woolley contends that her attorney's decision to pursue the coercion theory at sentencing, as opposed to presenting that defense at a trial, constituted ineffective assistance. She cites *Clay v. Director*, 749 F.2d 427 (7th Cir. 1984), for the proposition that "trial counsel who abandons a strong, triable defense has rendered constitutionally ineffective assistance." Br. of Appellant at 28. However, the defense of coercion requires that the defendant establish that

she committed the crime while operating under an "immediate threat of death or serious bodily injury." *United States v. Sotelo*, 94 F.3d 1037, 1039 (7th Cir.1996). While Woolley presented evidence during the sentencing hearing that Martin was a physically abusive husband, she presented no evidence other than her testimony that he ever threatened her with respect to the purchase of the gun or that she was under an *immediate* threat when she assisted him in acquiring the gun. By contrast, Rodgers (whom the district court found to be more credible than Woolley) testified that he went with the Woolleys to purchase the gun and practiced firing it with them, and he never observed any evidence that Marcia was being coerced. Woolley's testimony was not persuasive to the trial judge, who acknowledged that he would depart downward if a compelling case for coercion were presented, but he concluded that Woolley had failed to present such a case. Woolley's counsel obviously was aware of the coercion defense, but deemed it to be only strong enough to present as a potential basis for a downward departure, as opposed to a complete defense at trial. Such a strategic decision was, in our view, reasonable.

to assist Martin in obtaining a gun for the purchase of narcotics, Marcia knowingly risked that death would occur, even though the deaths which occurred did not come about during a drug transaction. The judge, while acknowledging that he would depart downward if he thought coercion was present, also concluded that the evidence did not support the conclusion that Martin Woolley coerced Marcia into assisting him with the purchase of the handgun. The judge therefore departed upward, to ninety-six months, as opposed to 120 months.

Thus, consistent with the plea agreement, both the Government and the defendant presented evidence in support of their respective positions concerning a potential departure in Woolley's sentence at the sentencing hearing, and the Government's evidence carried the day. "Defendants who appeal from sentences following plea agreements *always* point to unanticipated and unwelcome developments.... To say that a waiver of appeal is effective if and only if the defendant lacks grounds for appeal is to say that waivers will not be honored." *Wenger*, 58 F.3d at 282. The record is clear beyond a reasonable doubt, a standard of proof not required at sentencing hearing proceedings,[16] that Woolley was apprised of and knowingly and actively participated in the decision to enter into a plea agreement which included a sentence appeal waiver, and she received consideration from the Government for her acceptance of that agreement. The trial judge's handling of the proceedings in this case, and in particular his careful attention to the appeal waiver, was a model of clarity for trial judges to emulate. We conclude that Woolley did not receive ineffective assistance of counsel, and we grant the Government's motion to dismiss the appeal.

## IV. CONCLUSION

Woolley's appeal is DISMISSED.

---

16. *Cf. Schmidt*, 47 F.3d at 190 (record must "clearly demonstrate that the defendant know- ingly and voluntarily entered into the plea agreement" for waiver to be valid).