**Donald E. NELSON, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. 98–1203.

United States District Court, C.D. Illinois.

Aug. 21, 1998.

Donald E Nelson, Pekin, IL, pro se.

Colin S Bruce, U.S. Atty, Urbana, IL, for Respondent.

## ORDER

MIHM, Chief Judge.

This matter is now before the Court on Petitioner, Donald E. Nelson's ("Nelson"), Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, Nelson's § 2255 Motion [# 2] is DENIED.

### Background

On May 23, 1996, Nelson entered a guilty plea pursuant to a written plea agreement to charges of distribution of cocaine base. On August, 23, 1996, he was sentenced to a term of 130 months' imprisonment, a $3,000.00 fine, and $2,700.00 in restitution. Although he waived his right to appeal and pursue collateral relief pursuant to § 2255 in ¶ 10 of the written plea agreement, Nelson did attempt to pursue a direct appeal in the Seventh Circuit Court of Appeals. The appeal was dismissed on July 1, 1997.

On July 2, 1998, Nelson filed the instant Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. In his Motion, Nelson attempts to collaterally attack his conviction based on a sufficiency of the evidence argument and further claims that he received ineffective assistance of counsel at sentencing and on appeal. This Order follows.

### Discussion

I. *Request for Transcripts*

■ Nelson has also filed a Request for Transcripts and Other Documents Pursuant to Title 28 U.S.C. §§ 753(f) and 2250. While these statutory sections do authorize the provision of necessary transcripts and other doc-

uments without prepayment of fees where the petitioner is proceeding *in forma pauperis* ("IFP"), Nelson has not been granted IFP status. Moreover, a review of his prison trust fund ledgers reveals that he is not entitled to IFP status, as he regularly receives income from outside sources and earns not insubstantial amounts of performance pay. In fact, his case manager has certified that his average balance for the last six months was $125.00. Accordingly, as Nelson is not entitled to IFP status and his pursuit of §· 2255 relief is otherwise frivolous for the reasons subsequently set forth in this Order, his Request for Transcripts will be denied.

II. *§ 2255 Petition*

■ A petitioner may avail himself of § 2255 relief only if he can show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude or result in a complete miscarriage of justice." *Boyer v. United States,* 55 F.3d 296, 298 (7th Cir.1995), *cert. denied,* 516 U.S. 904, 116 S.Ct. 268, 133 L.Ed.2d 190 (1995). Section 2255 is limited to correcting errors that "vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude." *Guinan v. United States,* 6 F.3d 468, 470 (7th Cir.1993), *citing Scott v. United States,* 997 F.2d 340 (7th Cir.1993). A § 2255 motion is not, however, a substitute for a direct appeal. *Doe v. United States,* 51 F.3d 693, 698 (7th Cir.), *cert. denied,* 516 U.S. 876, 116 S.Ct. 205, 133 L.Ed.2d 139 (1995).

Here, the Government urges the Court to simply find Nelson barred from bringing this § 2255 motion by virtue of the fact that his plea agreement contains a waiver of his right to bring a collateral attack on his sentence. Nelson attempts to avoid the impact of this waiver by asking the Court to vacate his guilty plea. As there would be no waiver to enforce against him absent a valid plea agreement, the Court will address the validity of Nelson's plea agreement first.

■ Nelson seeks to have his guilty plea set aside, arguing that he did not enter the plea agreement knowingly and voluntarily because he was denied effective assistance of counsel. Specifically, he asserts:

[C]ounsel rendered ineffective assistance when he adviced [sic] defendant that cocaine base and crack cocaine carried the same penalty and ... if in fact he knew that there are desperity [sic] between cocaine base sentence and crack cocaine, he would not have plead [sic] guilty to possessing cocaine base (crack).

(Brief in Support of Motion at 4–5.)

When the Court accepted Nelson's guilty plea, it held a change of plea hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure. Rule 11 "provides protection for those who voluntarily choose to waive their constitutional right to a trial by pleading guilty while ensuring an adequate record to insulate the plea from appellate and collateral attacks." *Key v. United States*, 806 F.2d 133, 136 (7th Cir.1986). Rule 11 also provides for a colloquy that "exposes the defendant's state of mind in the record through personal interrogation." *Id., citing United States v. Fountain*, 777 F.2d 351, 356 (7th Cir.1985). This aspect of the Rule 11 hearing is especially important with respect to subsequent collateral proceedings, because the representations made by the defendant during a plea colloquy, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding. *Id., citing Thompson v. Wainwright*, 787 F.2d 1447 (11th Cir.1986); *Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). Furthermore, "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge*, 97 S.Ct. at 1629.

After a careful review of the transcript of Nelson's Rule 11 hearing, the Court finds that he has failed to overcome the strong presumption of verity. The pertinent portion of the record contains the following colloquy between Nelson and the Court:

Q: Having been sworn, do you understand that your answers to my questions are subject to the penalties of perjury or giving a false statement if you don't answer truthfully?

A: Yes, sir.

\*　　\*　　\*　　\*　　\*　　\*

Q: Have you been treated recently for any mental illness or addiction to narcotic drugs of any kind?

A: No, sir.

Q: Are you currently under the influence of any drug or medication or alcoholic beverage of any kind?

A: No, sir.

Q: Have you received a copy of the indictment pending against you, that is the written charges made against you in this case?

A: Yes, sir.

Q: Have you fully discussed those charges and the case in general, including any possible defenses that you might have, with Mr. Ding as your attorney?

A: Yes, sir.

Q: Are you fully satisfied with the counsel, representation and advice given to you in this case by Mr. Ding as your attorney?

A: Yes, sir.

Q: I'm going to summarize what I understand to be the operative terms of this plea agreement that you have signed. Did you have a reasonable opportunity to read and discuss this plea agreement with your attorney before you signed it?

A: Yes, sir.

Q: When I finish summarizing it, I'm going to ask you if you have the same understanding that I do about the contents of it. It provides that you will plead guilty to the indictment which charges you with the offense of distribution of cocaine base or crack. I might add, as I understand it the penalties that we're talking about here are a mandatory minimum of 10 years and a fine of up to $4 million, a 5 year period of supervised release, minimum 5 years up to life, a special assessment of $50.00.

\*　　\*　　\*　　\*　　\*　　\*

Q: If there is a prior felony drug conviction, the mandatory minimum doubles

from 10 years to 20, the fine doubles from a maximum of 4 million to a maximum of 8 million, and the period of supervised release doubles from a minimum of 5 to a minimum of 10 years, maximum would be life. And then if you were to have two prior felony drug convictions, there would be a mandatory life sentence. Do you understand that?

A: Yes, sir.

* * * * * *

Q: Do the terms of the plea agreement as I have just described them represent in their entirety every understanding that you have with the Government?

A: Yes, sir.

Q: Do you have any questions about how these would operate?

A: No, sir.

* * * * * *

Q: Has anyone made any promise or assurance to you of any kind in an effort to induce you to enter a plea of guilty in this case?

A: No, sir.

Q: Has anyone attempted in any way to force you to plead guilty?

A: No, sir.

Q: Are you pleading guilty of your own free will because you are guilty?

A: Yes, sir.

* * * * * *

Q: This indictment charges in one count that on approximately June 6 of 1995, in Champaign County within this federal district, you did knowingly and intentionally distribute approximately 27.3 grams of a mixture or substance containing cocaine base or crack, a Schedule II controlled substance. You will note the use of the word "knowingly" in this charge. That word is defined as meaning that your conduct was voluntary, that you understood what you were doing, that your conduct was not the result of ignorance, accident, mistake or some

other innocent reason. Do you understand that?

A: Yes, sir.

* * * * * *

Q: Do you have any questions concerning what you're charged with?

A: No, sir.

* * * * * *

Q: Then I want to discuss with you briefly what you did in order to satisfy myself that you are in fact guilty as charged. Going back to June 6 of 1995, were you in Champaign County at that time?

A: Yes, sir.

Q: Where did this incident occur?

A: At the K–Mart parking lot in Champaign.

Q: With whom did you engage in this transaction?

A: Andy Gaskins (phonetic).

Q: Was this an undercover officer or informant?

A: Informant.

Q: What, if anything, did you give to him at that time?

A: I gave him an ounce of cocaine.

Q: As far as you know, at that time was this crack or powder or what?

A: As far as I know, powder.

Q. Pardon?

A: Powder.

Q: Did you believe at that time that it was crack?

A: Yes, sir.

Q: The reason I asked that the way I did is, at least in my understanding, there is a common distinction made at the street level between powder and crack. Am I wrong about that? Maybe I am.

A: It's different, right.

Q: Well, this stuff you sold on that date, did you think you were selling just regular cocaine or did you think you were selling crack?

A: Crack.

\* \* \* \* \* \*

Q: Would the Government provide an independent basis in fact for the plea?

MR. BRUCE: Yes, Judge. Prior to June 6, a state police confidential informant attempted to negotiate a sale of approximately one ounce of crack from Mr. Nelson.... Mr. Nelson agreed to supply an ounce of crack cocaine to the confidential informant for $1500.00. The deal was to take place at the Super K–Mart store in Champaign which is located at the corner of Bloomington and Prospect Roads in Champaign. The helicopter surveillance observed Mr. Nelson going to that location, meeting with the confidential informant. At that time the confidential informant got in Mr. Nelson's pickup truck and Mr. Nelson provided him approximately an ounce of cocaine, 28 grams, for exchange of $1500.00 in cash. The confidential informant left the pickup truck and Mr. Nelson was seen driving away from the scene and the substance was then tested and found to be positive for cocaine base or crack.

BY THE COURT:

Q: Is this an accurate statement of what happened?

A: Yes, sir.

Q: How do you now plead to the charge of distribution of crack cocaine, guilty or not guilty?

A: Guilty.

(Transcript of Plea Hearing at 2–20.)

The Court finds that nothing in the record indicates that Nelson did not knowingly and voluntarily enter the plea agreement. However, as previously indicated, Nelson argues that he would not have entered the plea agreement if his trial counsel were not constitutionally ineffective. *See United States v. Alvarez–Quiroga,* 901 F.2d 1433, 1437 (7th Cir.1990) (recognizing that a claim that counsel was ineffective in representing a defendant during the course of a plea agreement can serve to undermine the knowing and voluntary nature of the plea).

The seminal case on ineffective assistance of counsel is *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland,* the Court stated that in order for a prisoner to demonstrate that counsel's performance fell below the constitutional standard, the petitioner would have to show that "counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. A prisoner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. The courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 690, 104 S.Ct. 2052.

To satisfy *Strickland's* prejudice prong in this case, Nelson must demonstrate through objective evidence a reasonable probability that, but for counsel's purportedly erroneous advice, he would not have entered the guilty plea and would have insisted upon going to trial. *United States v. Woolley,* 123 F.3d 627, 635 (7th Cir.1997). "It is far from obvious how a petitioner is expected to make such a showing, but it is clear that 'merely making such an allegation is insufficient.'" *United States v. Ryan,* 986 F.Supp. 509, 513 (N.D.Ill.1997), *citing Key,* 806 F.2d at 139; *see also McCleese v. United States,* 75 F.3d 1174, 1179 (7th Cir.1996) (requiring that the petitioner establish through objective evidence that he would not have accepted the plea).

Here, the record is replete with clear and unambiguous statements or admissions by Nelson that the substance in his possession was crack. The Indictment charged him with the distribution of a substance containing crack cocaine. Additionally, in the transcript of his Rule 11 hearing, the Court explained that he was pleading guilty to an Indictment that charged him with distribution of the crack form of cocaine base, and Nelson admitted that he understood the terms of the plea agreement and had no questions about the charges set forth in the Indictment. (Transcript of Plea Hearing at

4, 10, 16–17.) When asked if he believed at the time of the transaction that the substance in his possession was crack, Nelson responded, "Yes, sir." *Id.* at 18. The Court then explained that there is a common distinction between powder cocaine and crack and again asked if the substance in Nelson's possession was regular cocaine or crack. *Id.* at 18–19. In response, Nelson unambiguously confirmed that the substance was in fact crack. *Id.* at 19. The Government then gave an independent basis in fact for the plea which described Nelson's involvement in negotiations for and the consummation of a crack sale, as well as objective findings that the substance had tested positive for crack. *Id.* at 19–20. Nelson agreed that the Government's description was an accurate statement of what happened and proceeded to plead guilty to distribution of crack cocaine. *Id.* at 20.

At sentencing, Nelson indicated that he had been given a reasonable opportunity to read his pre-sentence report and review it with his attorney. (Transcript of Sentencing Hearing at 3–4.) When asked whether there was anything in the report he found to be inaccurate, he raised other unrelated issues but never argued that the illegal substance in his possession was anything other than crack cocaine. *Id.* at 4–7.

Thus, it is clear that Nelson openly acknowledged that he possessed crack cocaine numerous times during these proceedings. Moreover, despite numerous opportunities to do so, Nelson made no attempt to argue that the substance in his possession was any form of cocaine base other than crack and presented no evidence to the contrary. This makes the facts of this case readily distinguishable from those in *United States v. Adams,* 125 F.3d 586, 592 (7th Cir.1997), where the defendant specifically objected to the characterization of the cocaine base substance in his possession as crack during his change of plea hearing, and *United States v. James,* 78 F.3d 851, 856 (3rd Cir.1996), where the Third Circuit found that more than a casual reference to crack, as opposed to cocaine base in general, was required to demonstrate a knowing and voluntary admission.

As the Seventh Circuit recognized in *United States v. Earnest,* where a defendant has clearly and unambiguously admitted that he sold crack cocaine during the plea colloquy, the court may find that he has waived his right to contest the enhanced sentence because " '[t]here can be no question that admissions to the court by a defendant during a guilty plea colloquy can be relied upon by the court at the sentencing stage.' " 129 F.3d 906, 916 (7th Cir.1997), *quoting James,* 78 F.3d at 856; *see also United States v. Hall,* 109 F.3d 1227, 1236 (7th Cir.), *cert. denied,* — U.S. ——, 118 S.Ct. 153, 139 L.Ed.2d 99 (1997) (holding that enhanced penalties for distribution of crack cocaine were supported by the evidence when "[w]itness after witness testified that the substance defendants distributed was 'crack' "). Here, the Indictment charged Nelson with distribution of crack, the Court and prosecutor referred to the substance as crack throughout the proceedings, Nelson himself admitted on more than one occasion that he possessed and distributed crack cocaine, and the substance tested positive for crack cocaine. Furthermore, Nelson never attempted to deny or otherwise challenge that the substance was actually crack cocaine. Accordingly, the Court finds that Nelson waived his right to contest his enhanced sentence by repeatedly admitting that the substance he was charged with distributing was in fact crack cocaine. *See United States v. Valenzuela,* 150 F.3d 664, 667 (7th Cir.1998).

Therefore, regardless of what counsel may have told him about the penalties at sentencing for possession of cocaine base as opposed to the crack form of cocaine base, the record before the Court unequivocally demonstrates that Nelson never even alluded to another form of cocaine base but rather freely admitted that the substance in his possession was crack cocaine. Had Nelson truly believed that the Court and prosecutor were incorrect in making references to crack, it would seem only reasonable that he would have made some attempt to correct the factual record. These findings render Nelson's argument nothing more than a bare allegation that he would not have entered a guilty plea but for counsel's advice, which has been rejected in cases such as *Key, McCleese,* and *Ryan.* Ac-

cordingly, Nelson has failed to meet his burden, and he will not be permitted to set aside his plea agreement.

■ However, this ruling does not completely dispose of this matter, because Nelson attempts to raise other grounds in his § 2255 Motion. The Government argues that his Motion should be dismissed because, like his right to bring a direct appeal, Nelson waived his right to bring future collateral attacks in his plea agreement. The Seventh Circuit has clearly held that waivers of the right to appeal are generally enforceable. *Woolley*, 123 F.3d at 632; *United States v. Feichtinger*, 105 F.3d at 1188, 1190 (7th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 2467, 138 L.Ed.2d 223 (1997); *United States v. Wenger*, 58 F.3d 280, 281–82 (7th Cir.1995), *cert. denied*, 516 U.S. 936, 116 S.Ct. 349, 133 L.Ed.2d 245 (1995). Although this circuit "consistently enforces waiver provisions in plea agreements", the Court is unaware of any case law from this circuit specifically holding that § 2255 relief may be similarly waived in a plea agreement. *United States v. Stennis*, 151 F.3d 1034, 1035 (7th Cir. 1998).

■ Like the right to pursue a direct appeal from a conviction or sentence, a defendant's right to bring a collateral attack pursuant to § 2255 is statutory. *Feichtinger*, 105 F.3d at 1190; *Woolley*, 123 F.3d at 631–32; *see also United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir.1993). Such statutory rights are waivable and may be waived in a plea agreement if the waiver is "express and unambiguous" and the record demonstrates that it was "made knowingly and voluntarily." *Woolley*, 123 F.3d at 632; *Feichtinger*, 105 F.3d at 1190. The Fifth Circuit Court of Appeals has addressed the enforceability of a waiver of the right to bring a collateral attack contained in a plea agreement and taken the position that there is no principled means of distinguishing such a waiver from the clearly permissible waiver of appeal rights. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir.1994).

■ As a general rule, this Court agrees and holds that an informed and voluntary waiver of post-conviction relief is normally effective to bar a subsequent attempt to bring a § 2255 motion. *See Wilkes*, 20 F.3d at 653. However, this is not to say that a defendant's waiver of his right to collaterally attack his sentence completely forecloses review under all circumstances. To the contrary, the Court recognizes that such a waiver may not always be enforceable, such as where ineffective assistance of counsel negated the knowing or voluntary nature of the waiver itself, the waiver was a product of coercion, or the trial court relied on some constitutionally impermissible factor, such as race, in imposing sentence. Under exceptional circumstances such as these, the dictates of justice would require that the defendant be allowed to avoid his waiver and pursue collateral relief as if the waiver did not exist.

■ However, the matter now before the Court is not such an exceptional case, as Nelson makes no allegations that ineffective assistance of counsel or some other constitutionally impermissible force specifically affected his waiver of the right to bring a collateral attack on his sentence. Rather, his allegations of ineffective assistance go only to his knowledge with respect to the plea agreement itself, and this argument has already been rejected. That being said, the Court must still examine the text of the plea agreement, as well as the transcript of Nelson's plea hearing, to determine whether the record in this case supports a finding that Nelson made an express and unambiguous waiver of his right to pursue a collateral attack of his sentence that was both knowing and voluntary at the time he entered into his plea agreement.

A review of Nelson's plea agreement reveals a post-conviction waiver that is both express and unambiguous. In ¶ 10 of the plea agreement, Nelson agreed to waive "his right to challenge the sentence or the manner in which the sentence was determined in any collateral attack including, but not limited to, any motion brought pursuant to Title 28, United States Code, Section 2255." (Plea Agreement, ¶ 10.) This provision clearly indicates that Nelson's right to bring a Motion to Vacate, Set Aside, or Correct Sentence pursuant to § 2255 is included within the

waiver. Therefore, the Court will examine the record as a whole to determine whether this waiver was both knowing and voluntary.

During his Rule 11 hearing, the Court specifically questioned Nelson with respect to the waiver and the consequences of making such a waiver:

Q: In exchange for the concessions made by the Government in this plea agreement, you further waive your right to challenge the sentence or the manner in which the sentence was determined in any collateral attack, including but not limited to any motion brought in the nature of a habeas corpus proceeding .... there is also a possibility under the law for you to file what is called a habeas corpus petition, which would normally occur after an appeal is over or in a situation where, for whatever reason, you chose not to file a direct appeal, and in that habeas petition you would claim that there was something unconstitutional about the sentence that was imposed. And there are a wide variety of matters that can be raised in an appeal or habeas petition, not only including the conduct of the Court but also even the conduct of your own attorney. Sometimes people will claim that their attorney, for example, did not effectively represent them. What this paragraph provides is basically that you're giving up all of those appeal rights and the right to file any sort of collateral attack on this proceeding. So the bottom line is with this provision here, when the Court does impose sentence and you walk out of court that day, that's basically it. There is no—if you're not happy with the sentence, there is no right to appeal or attack it. Do you understand?

A: Yes, sir.

Q: Have you discussed this specifically with him?

MR. DING: Yes, Your Honor, I did, and I know for the record Mr. Kuknyo did go over this plea agreement with Mr. Nelson, watched him sign it personally.

Q: Do you have any questions about this particular provision?

A: No, sir.

&ast; &ast; &ast; &ast; &ast; &ast;

Q: Are those the terms of your plea agreement as you understand them?

A: Yes, sir.

Q: Do the terms of the plea agreement as I have just described them represent in their entirety every understanding that you have with the Government?

A: Yes, sir.

Q: Do you have any questions about how these would operate?

A: No, sir.

&ast; &ast; &ast; &ast; &ast; &ast;

Q: Do you understand that by entering into this plea agreement and entering a plea of guilty, you will have waived or given up any and all rights to appeal any part of this sentence?

A: Yes, sir.

Nelson neither denies that he signed the written plea agreement containing the waiver of his right to pursue collateral relief from his sentence nor claims that he was illiterate or otherwise unable to understand the terms of the agreement. He also does not claim that he did not understand the consequence of the waiver itself or that either the Court or his counsel's explanation of what this waiver entailed was somehow deficient. Therefore, the Court finds that Nelson's waiver of his right to pursue collateral relief was both knowing and voluntary and operates to bar him from pursuing further habeas corpus relief, and this § 2255 Motion is frivolous. *See United States v. Richardson*, 1998 WL 388590, at *3 (E.D.La. July 9, 1998) (finding that defendant's claims under § 2255 that his plea was involuntary and that the government had not met its burden of proving he possessed crack cocaine were barred by a valid waiver in his plea agreement).

## Conclusion

For the reasons set forth herein, Nelson's Motion to Vacate, Set Aside, or Correct Sentence pursuant to § 2255[# 2] is DENIED, and his Request for Transcripts and Other

Documents [# 6] is also DENIED. This matter is now terminated.