In the

# United States Court of Appeals

### For the Seventh Circuit

No. 06-1014

ARMANDO NUNEZ,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

On Remand from the Supreme Court of the United States.

SUBMITTED AUGUST 15, 2008—DECIDED OCTOBER 6, 2008

Before EASTERBROOK, *Chief Judge*, and BAUER and COFFEY, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Last year we held that by surrendering, as part of a plea bargain, his opportunity to wage a collateral attack on his conviction, Armando Nunez had waived any right to relief based on the theory that his lawyer should have filed a notice of appeal in violation of the plea agreement (which waived the right to appeal as well as the right to pursue collateral relief). The agreement preserved an opportunity to contest the volun-

tariness of the plea. After concluding that the plea was voluntary, we enforced the waiver and held that Nunez is not entitled to collateral relief. 495 F.3d 544 (7th Cir. 2007).

## I

After Nunez filed a petition for a writ of certiorari, the Solicitor General told the Justices that the waiver did not necessarily foreclose all of the arguments that Nunez had tried to raise on collateral review. At the Solicitor General's request, the Court remanded for further consideration of that subject. 128 S. Ct. 2990 (2008). The Chief Justice, Justice Scalia, and Justice Thomas dissented from that order, which they deemed improvident because the Solicitor General had not confessed error on this court's *judgment* but had just expressed reservations about part of the opinion's exposition.

In papers filed on remand, however, the United States Attorney has made the confession of error that the Solicitor General did not. The United States Attorney asserts that the waiver in the plea bargain does not cover the sort of argument that Nunez seeks to present and adds that a defendant has a constitutional right to have a lawyer file a notice of appeal on his behalf even after formally waiving that right. We accept the first part of the United States Attorney's current position but not the second.

The plea bargain between Nunez and the United States waives the right to appeal. It also waives collateral review of the sentence and the manner in which it was deter-

mined. That reference to the "sentence" could mean just the length of imprisonment (leaving the conviction open to collateral challenge), but in a criminal case the sentence is the judgment, *Berman v. United States*, 302 U.S. 211, 212 (1937), so this waiver might well cover all issues. We gave the waiver the broader reading for several reasons.

First, it would be anomalous to plead guilty and waive appeal, yet reserve by indirection a right to test the conviction later. Collateral review is not a means to undo an express waiver of an issue—that much was established even before *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), overruled *Fay v. Noia*, 372 U.S. 391 (1963)—and both the guilty plea and the waiver of appeal expressly surrender any right to upset the conviction. See, e.g., *United States v. Broce*, 488 U.S. 563 (1989). Having twice waived any objection to the conviction, it was not necessary for Nunez to waive it a third time when dealing with collateral review. Second, the waiver of collateral review contains a proviso—the reservation of a right to contest the voluntariness of the plea—that serves a function only if the waiver has the broader meaning. Third, when accepting Nunez's plea the district judge was required by Fed. R. Crim. P. 11(b)(1)(N) to state on the record "the terms of any plea-agreement provision waiving" the right to appeal or collateral review. In obtaining Nunez's assent to these terms on the record, the judge stated that the waiver covers every issue other than the voluntariness of the plea. Asked whether he understood this, Nunez replied "yes."

Looking at this subject again on remand, we would be inclined to conclude a second time that the waiver covers

the conviction—but its scope no longer matters. For the United States, as the waiver's beneficiary, may freely give up its protection. And it has done so. The United States has urged us to reach the merits of Nunez's collateral attack. The Supreme Court's remand order directs us to consider "the position asserted by the Solicitor General in his brief for the United States filed May 12, 2008." As we have explained, the position taken in this court on remand differs from that of the Solicitor General; the United States Attorney has confessed error, as the Solicitor General did not. But we do not think that the Court's language prevents the United States from formally surrendering the benefit of the waiver. Now that it has done so, we turn to the substantive issues.

Two caveats. First, our prior opinion considers, and rejects on the merits, Nunez's argument that the plea was involuntary. 495 F.3d at 546. That subject is not within the scope of the remand. Second, a litigant's confession of error on a question of law does not bind the court. See *Young v. United States*, 315 U.S. 257, 258–59 (1942) ("The considered judgment of the law enforcement officers that reversible error has been committed is entitled to great weight, but our judicial obligations compel us to examine independently the errors confessed."); *Ren v. Gonzales*, 440 F.3d 446 (7th Cir. 2006). Any litigant is entitled to give up a contractual benefit; that's why we have accepted the prosecutor's current position on the scope of Nunez's waiver. And the United States could dismiss the charges against Nunez. See *Rinaldi v. United States*, 434 U.S. 22 (1977); *In re United States*, 345 F.3d 450 (7th Cir. 2003). But the Department of Justice does not

propose to set Nunez free; it wants the conviction to stand, though after a hearing to explore the question whether Nunez asked his lawyer to appeal. Whether such a hearing is necessary is a question of law, on which the prosecutor's view is not conclusive. We will reverse the judgment of the district court, and direct it to hold such a hearing, only if the district court erred by holding that a request to his lawyer would not entitle Nunez to relief.

We do not think that the judgment is in error. Instead of sending readers to our first opinion, we will repeat much of what was said there. Recapitulation is better than leaving our reasoning scattered across volumes of the Federal Reporter.

## II

Charged with multiple cocaine offenses, Armando Nunez negotiated a plea bargain: the prosecutor dismissed all counts but one and recommended a sentence at the lowest point in the Guideline range. As part of the deal, Nunez agreed not to appeal unless the sentence exceeded the statutory maximum or the waiver clause itself should be deemed invalid. The sentence of 135 months is well under the maximum. (Nunez admitted distributing more than five kilograms of cocaine, so the judge could have sentenced him to life in prison. See 21 U.S.C. §841(b)(1)(A). Nunez's actual sentence was close to the statutory floor of 120 months.) Nonetheless, Nunez told his lawyer to appeal (or so he says; the assertion has been contested, but we shall assume that Nunez

did ask). When the lawyer balked, he filed this collateral attack under 28 U.S.C. §2255.

Because the plea was voluntary, the waiver of appeal must be enforced. See *United States v. Wenger*, 58 F.3d 280 (7th Cir. 1995). And that waiver knocks out Nunez's argument that his lawyer failed to follow his direction to file an appeal.

To establish ineffective assistance of counsel, a prisoner must show not only that the lawyer's work as a whole was objectively deficient but also that prejudice ensued. See *Wright v. Van Patten*, 128 S. Ct. 743 (2008); *Bell v. Cone*, 535 U.S. 685 (2002); *Strickland v. Washington*, 466 U.S. 668 (1984). A lawyer who respects his client's formal waiver of appeal does not render objectively deficient service, and the waiver (coupled with the plea itself) shows that Nunez did not suffer prejudice even if his lawyer should have filed a notice of appeal. Had an appeal been filed, it would have been dismissed in short order.

In saying this, we recognize that seven courts of appeals have held that a waiver of appeal does not relieve counsel of the duty to file a notice of appeal on a client's request. See *Campusano v. United States*, 442 F.3d 770, 772–77 (2d Cir. 2006); *United States v. Poindexter*, 492 F.3d 263 (4th Cir. 2007); *United States v. Tapp*, 491 F.3d 263 (5th Cir. 2007); *Watson v. United States*, 493 F.3d 960 (8th Cir. 2007); *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1195–99 (9th Cir. 2005); *United States v. Garrett*, 402 F.3d 1262, 1265–67 (10th Cir. 2005); *Gomez-Diaz v. United States*, 433 F.3d 788, 791–94 (11th Cir. 2005). But see *United States v. Mabry*, 536 F.3d 231, 239–42 (3d Cir. 2008) (disapproving that conclusion,

though ultimately holding, as our initial decision did, that a waiver of collateral review blocked relief whether or not counsel was obliged to file a direct appeal).

These decisions (other than *Mabry*) rely on *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), which observes that a criminal defendant has a statutory right to appellate review and holds that, when counsel frustrates that right by failing to appeal on his client's request, counsel's performance is automatically ineffective. A lawyer who does not show up for trial might as well be a moose, and giving the defendant a moose does not satisfy the sixth amendment. See *United States v. Cronic*, 466 U.S. 648 (1984). The same understanding applies when the lawyer does not show up for appeal, these courts hold, despite a defendant's voluntary waiver of the opportunity to appeal.

There may well be practical benefits to the other circuits' extension of *Roe*, because waivers of appeal are not airtight. As we held in *Wenger*, a waiver stands or falls with the plea bargain of which it is a part. See also *United States v. Sura*, 511 F.3d 654 (7th Cir. 2007) (violation of Rule 11(b)(1)(N) can vitiate a guilty plea that includes a waiver of appeal). A defendant who wants a lawyer to argue on appeal that the plea was involuntary has a right to legal assistance. Moreover, waivers of appeal have different scopes. Some—for example, the waiver in *Poindexter*—concern only the sentence; an appeal that calls the conviction itself into question is not foreclosed by such a waiver. Had the district judge imposed a sentence higher than the statutory maximum, Nunez too could have appealed and would have been entitled to assistance of counsel to make that argument.

A requirement that a lawyer file an appeal on demand, and let the court of appeals sort out whether the defendant is entitled to appellate review, avoids any need to make nice distinctions during the 10 days allowed for appeal. Simplicity is a virtue, and a mechanical rule ("On request, file a notice of appeal") could be a good addition to the Federal Rules of Criminal Procedure. Cf. Fed. R. Crim. P. 32(j)(2) (clerk of court must file a notice of appeal on a defendant's request). But the Constitution does not include all provisions that might be useful components of the federal rules.

Decisions such as *Van Patten* and *Cone* tell us that *Roe* is a modest exception to *Strickland*'s approach. Unless the lawyer simply doesn't show up, it is essential to establish deficient performance and prejudice. *Roe* concludes that failure to appeal is a form of not showing up for duty. But *Roe*'s rationale presumes that the defendant has contested the charges; when a defendant not only pleads guilty but also waives the right to appeal, it is hard to classify the absence of appeal as the lawyer taking a vacation.

In *Roe* the Court remarked that a failure to file a notice of appeal "cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." 528 U.S. at 477. Filing an appeal is not "ministerial" when the defendant has waived that entitlement. Waivers are enforced even if a defendant changes his mind. A defendant who waits past the time for appeal (10 days in federal court) before asking his lawyer to

proceed cannot expect that this will be done as a "purely ministerial" task, for after 10 days there is no longer a right to appeal; likewise there is no longer a right to appeal following a waiver. Filing an appeal after a waiver is no more a "ministerial duty" than preparing for trial would be a lawyer's ministerial duty after the defendant pleads guilty.

Instead of being obliged to follow his client's (latest) wishes, however unreasonable they may be, a lawyer has a duty to the judiciary to avoid frivolous litigation—and an appeal in the teeth of a valid waiver is frivolous. A lawyer also has a duty to his client to avoid taking steps that will cost the client the benefit of the plea bargain. See *United States v. Knox*, 287 F.3d 667 (7th Cir. 2002). A lawyer might have a responsibility to file an appeal if the client indicated a desire to withdraw the plea, for that amounts to a declaration by the defendant of willingness to give up the plea's benefits, and withdrawal would abrogate the waiver too; but Nunez (who had not asked the district judge to set aside the plea) does not contend that he told his lawyer that he had any desire to achieve that goal by an appeal.

Ordinarily a lawyer cannot make an independent decision about whether an appeal would be frivolous but must follow the procedure outlined in *Anders v. California*, 386 U.S. 738 (1967), and proceed as an advocate until the judiciary agrees with counsel's belief that more litigation would be frivolous. As we explained in *United States v. Eskridge*, 445 F.3d 930, 932 (7th Cir. 2006), however, the *Anders* procedure is required only when there is a right

to appeal (and thus a right to have counsel act as an advocate *on* appeal). Nunez gave up his right to appeal, and with it the foundation for the *Anders* approach.

With the waiver in force, counsel's duty to protect his client's interests militates against filing an appeal. *United States v. Whitlow*, 287 F.3d 638 (7th Cir. 2002), and *United States v. Hare*, 269 F.3d 859 (7th Cir. 2001), hold that, when a defendant appeals despite agreeing not to do so, the prosecutor may withdraw concessions made as part of the bargain. The prosecutor made substantial concessions to Nunez. An appeal would have put them in jeopardy, allowing the prosecutor to reinstate the two dismissed charges or ask the district court to increase the sentence on the existing conviction. If it did nothing else, an appeal would have demonstrated that Nunez had not accepted responsibility and would have entitled the judge to rescind the discount under U.S.S.G. §3E1.1. A defendant has more reason to protest if a lawyer files an appeal that jeopardizes the benefit of the bargain than to protest if the lawyer does nothing—for "nothing" is at least harmless.

The sort of appeal that the Supreme Court considered in *Roe* is one where the defendant can gain but not lose. The sort of appeal that Nunez wanted to take was one by which he could lose but not gain. Protecting a client from harm is a vital part of a lawyer's job. It will not do to reply that the decision to appeal is entrusted to the defendant personally, and that counsel must do the client's bidding. Nunez *had* made a personal decision—a decision not to appeal. That's what the waiver was about. As we've

stressed, a defendant has no right to countermand such a formal choice, and a lawyer faced with inconsistent instructions by his client does not have a "ministerial" duty to follow one rather than the other. When deciding which of the contradictory directions to implement, a lawyer should do what's best for the client, which usually means preserving the benefit of the plea bargain. That this approach also honors the lawyer's duty to avoid frivolous litigation is an extra benefit.

What arguments could Nunez's lawyer have advanced, had an appeal been taken? There are only two. One would have been that the sentence exceeded the statutory maximum. Such an argument was excluded from the waiver but would be untenable; Nunez's admission that he had distributed more than five kilograms of cocaine exposed him to a maximum of life imprisonment. The other is that the plea itself was involuntary. If so, the conviction would be set aside. As we've now mentioned several times, however, Nunez made exactly that argument on collateral attack, and we addressed and rejected it *on the merits* in the first appeal. There is therefore nothing to be gained from a remand. Suppose the district court were to hold a hearing, conclude that Nunez had asked his lawyer to appeal, and reenter the judgment so that Nunez could appeal (with counsel) as if on direct appeal. Neither of the two arguments counsel could raise would get anywhere. There is no point in a constitutional rule that would yield an exercise in futility.

One important caveat bears attention. Our analysis supposes that the defendant really has waived his entitle-

ment to direct appeal. When a waiver is ambiguous, counsel would do well to file an appeal and let the court sort things out. If it turns out that the waiver does not cover an issue that defendant told counsel he wanted to present on direct appeal, then counsel's failure to file a notice of appeal is within the scope of *Roe* and will lead to collateral relief without regard to prejudice. Our conclusion that *Strickland* applies is limited to situations in which the waiver actually governs the proposed appeal.

Once a defendant has waived his right to appeal not only in writing but also in open court under Rule 11(b)(1)(N), the sixth amendment does not require counsel to disregard the waiver. The regimen of *Strickland* applies: the defendant must show both objectively deficient performance and prejudice. Unless a non-frivolous issue could be raised on appeal, counsel should protect the client's interest in retaining the benefit of the plea bargain. To the extent that other circuits disable counsel from making such a professional judgment, we disagree with them. This opinion has been circulated before release to all active judges under Circuit Rule 40(e). No judge favored a hearing en banc; Circuit Judge Flaum did not participate in the consideration or decision of this case.

Nunez, who has enjoyed the assistance of counsel on this collateral attack, has never identified a plausible argument that could have been raised on direct appeal. So even if Nunez asked his lawyer to file an appeal, counsel did not transgress the Constitution by honoring his client's considered written choice (the waiver) rather than his client's oral second thoughts. Nunez's contention flunks

both the conduct and the prejudice components of ineffective-assistance doctrine.

AFFIRMED