In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3285

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JACINTO CHAPA,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:07-CR-073-3—**Larry J. McKinney**, *Judge*.

ARGUED FEBRUARY 12, 2010—DECIDED APRIL 26, 2010

Before EASTERBROOK, *Chief Judge*, and HAMILTON,
*Circuit Judge*, and SPRINGMANN, *District Judge.**

SPRINGMANN, *District Judge.* This is a direct appeal
from a criminal conviction in the United States District
Court, Southern District of Indiana, following the entry

---

* The Honorable Theresa L. Springmann, District Judge for
the United States District Court, Northern District of Indiana,
sitting by designation.

of a guilty plea by the Appellant, Jacinto Chapa, on April 24, 2009. Chapa pled guilty and was convicted on one count of conspiracy to possess with the intent to distribute 1,000 or more kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The Defendant asks this Court to vacate his conviction and remand this case to the District Court for trial because his guilty plea was invalid. Because we conclude that the Defendant waived his right to appeal his conviction, we dismiss the appeal.

## I. Background

Jacinto Chapa was charged with conspiracy to possess with the intent to distribute 1,000 or more kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846 on December 18, 2007. After the Government filed an information alleging a prior drug felony conviction, which enhanced the potential penalties pursuant to 21 U.S.C. § 851(a)(1), Chapa provided a statement to the Government for the purpose of meeting the qualifications for safety valve treatment under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. Chapa then entered into a plea agreement with the Government on April 7, 2009. At the time the plea agreement was signed, it was the understanding of both Chapa and the Government that Chapa would qualify for safety valve treatment, and thus receive a sentence lower than the mandatory minimum sentence of twenty years.

In the written plea agreement, under the subheading of "APPELLATE WAIVER," Chapa acknowledged his

right to appeal the conviction and sentence, and waived that right. The section stated:

> Defendant understands that he has a statutory right to appeal the conviction and sentence imposed and the manner in which the sentence was determined. Acknowledging this right and in exchange for the concessions made by the Government in this Plea Agreement, Defendant expressly waives his right to appeal the conviction and any sentence imposed on any ground, including the right to appeal conferred by 18 U.S.C. § 3742. Additionally, he also expressly agrees not to contest his conviction or sentence or seek to modify his sentence or the manner in which it was determined in any type of proceeding, including, but not limited to, an action brought under 28 U.S.C. § 2255.

Chapa appeared before the District Court to enter his plea of guilty on April 24, 2009. The Court ascertained that Chapa was 31 years old, was not under the influence of intoxicants, and had no difficulty reading and writing the English language or in communicating with his counsel. The District Court then made a finding that Chapa was aware of the charge to which he was pleading.

During the proceeding, the Court addressed the express waiver of appeal contained in the plea agreement. The Court read aloud the waiver nearly verbatim. When the Court asked if Chapa understood the waiver, he responded, "Yes, sir." When the Court asked whether Chapa understood that he would have the right to appeal absent his guilty plea, he responded, "Yes, sir."

The Court then addressed the issue of Chapa's voluntariness in pleading guilty. The Court stated, "Paragraph 13, sir, says that you acknowledge that no threats, promises, or representations have been made nor agreements reached other than those set forth in this document to induce you to plead guilty. Is that still true?" Chapa responded, "Yes, sir." Chapa stated that he had read the entire plea agreement, had discussed it with his attorney, and that the terms of the agreement correctly reflected the result of his plea negotiations. The Court then asked, "It says you're freely and voluntarily pleading guilty in this case because you are guilty. Is that still true?" Chapa responded, "Yes, sir." The Court then accepted the guilty plea, finding Chapa "fully competent and capable of entering an informed plea; that he's aware of the nature of the charges and the consequences of the plea; that this plea of guilty is a knowing and voluntary plea supported by an independent basis in fact."

The Presentence Investigation Report (PSR) prepared on May 28, 2009, noted that Chapa was not, in fact, eligible for safety valve treatment. At the ensuing sentencing hearing held on September 3, 2009, Chapa objected to the findings of the PSR, but did not move to withdraw his plea of guilty or present the argument that he had not knowingly, intelligently, and voluntarily entered his guilty plea. Chapa was then sentenced to the statutory mandatory minimum of twenty years in prison.

## II.  Analysis

Before we can reach the merits of Chapa's arguments, we must determine whether to dismiss this appeal

because Chapa entered into a plea agreement with the aforementioned appellate waiver.

We review the enforceability of a waiver agreement de novo. *Jones v. United States*, 167 F.3d 1142, 1144 (7th Cir. 1999). It is well-settled that appellate waivers in plea agreements are generally enforceable. *United States v. Emerson*, 349 F.3d 986, 988 (7th Cir. 2003); *see United States v. Nave*, 302 F.3d 719, 720-21 (7th Cir. 2002). "But [an appellate waiver] does not, in every instance, fore-close review." *United States v. Mason*, 343 F.3d 893, 894 (7th Cir. 2003) (internal quotation marks and citation omitted). For the waiver to be enforceable, the disputed appeal must fall within its scope. *See United States v. Vega*, 241 F.3d 910, 912 (7th Cir. 2001) (per curiam). We will enforce an appellate waiver if its terms are "express and unambiguous," *see United States v. Woolley*, 123 F.3d 627, 632 (7th Cir. 1997), and the record shows that the defendant "'knowingly and voluntarily'" entered into the agreement. *United States v. Jemison*, 237 F.3d 911, 917 (7th Cir. 2001) (quoting *Jones v. United States*, 167 F.3d 1142, 1144 (7th Cir. 1999)).[1]

---

[1] As we noted in *Woolley*, one reason for permitting criminal defendants to agree to waive their rights as a part of a plea negotiation process was articulated by the Supreme Court: "[I]f the prosecutor is interested in 'buying' the reliability assurance that accompanies a waiver agreement, then precluding waiver can only stifle the market for plea bargains. A defendant can 'maximize' what he has to 'sell' only if he is permitted to offer what the prosecutor is most interested in buying." *United States v. Mezzanatto*, 513 U.S. 196, 207 (1995).

A plea agreement is a type of contract subject to contract law principles tempered by limits that the Constitution places on the criminal process. *See United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005). To determine if a defendant knew and understood the plea agreement, we must examine the language of the plea agreement itself and also look to the plea colloquy between the defendant and the judge. *Woolley*, 123 F.3d at 632; *see also United States v. Sura*, 511 F.3d 654, 661 (7th Cir. 2007) (the district court must inform the defendant of an appellate waiver during the Rule 11 colloquy).

In this case, Chapa does not contend that the terms of the waiver were not express and unambiguous. Nor could he. The waiver was set forth in plain language in the plea agreement under its own heading, and Chapa averred that he read the agreement and discussed its meaning and implications with his attorney. Rather, Chapa asserts that both he and the Government mistakenly believed that he would satisfy the requirements for sentencing pursuant to the safety valve provision. He contends that this "mutual mistake" invalidates the plea agreement, including the appellate waiver, because it renders his agreement unknowing and involuntary. This assertion is not supported by either the language of the plea agreement or the Rule 11 colloquy.

In examining the plea agreement, we do not find support for Chapa's position that his agreement was predicated on the mutual mistake as to his eligibility for safety valve treatment. Paragraph eleven of the agreement includes the provisions, "Defendant understands

that if he does not qualify for [safety valve treatment], defendant will be subject to a statutory mandatory minimum sentence" and "[a]bsent the applicability of [safety valve treatment], the Court cannot sentence below a statutory mandatory minimum term of imprisonment." This language was preceded by one paragraph with Chapa's waiver of appellate rights. The agreement, therefore, leaves no doubt that Chapa contemplated his potential safety valve ineligibility when waiving his right to appeal.

Examination of the Rule 11 colloquy further underscores this Court's determination that the Defendant knowingly and voluntarily agreed to the express and unambiguous appellate waiver. The record indicates that the experienced trial judge conducted a searching inquiry to ascertain that the Defendant understood all of the terms of the plea agreement. The judge highlighted all of the terms including potential penalties and sentencing, and Chapa indicated that he understood them. The judge also stressed the fact that without the safety valve, the District Court could not sentence him below the mandatory minimum. Chapa also acknowledged that he had waived his right to appeal, and that no threats, promises, representations, or agreements other than those set forth in the plea agreement had induced him to plead guilty.

Such representations, made by a defendant under oath at a plea colloquy, are entitled to a presumption of correctness. *United States v. Bowlin*, 534 F.3d 654, 660 (7th Cir. 2008). Only after making a complete record demonstrating that Chapa understood the terms of the

waiver did the District Court accept the plea of guilty. Thus, as in *United States v. Schmidt*, "[t]he guilty plea hearing could not be more clear in reflecting that it was conducted in full accordance with Fed.R.Crim.P. 11, and reveals that [Chapa] knowingly and voluntarily waived his right to appeal his . . . sentence." 47 F.3d 188, 191 (7th Cir. 1995).

### III. Conclusion

Chapa's appeal is DISMISSED.