In the

# United States Court of Appeals
### For the Seventh Circuit

Nos. 09-2715 & 09-2788

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JORGE QUINTERO, also known as SAMUEL MUNOZ,
and CLAUDIA ANDRADE MARTINEZ,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Indiana, Hammond Division.
Nos. 2:08-CR-111(1) & (2)—**Rudy Lozano** and **James T. Moody**, *Judges.*

ARGUED MARCH 29, 2010—DECIDED AUGUST 25, 2010

Before CUDAHY and KANNE, *Circuit Judges*, and
DARRAH, *District Judge.**

KANNE, *Circuit Judge.* This consolidated appeal arises
from a foiled bank robbery. The robber, Jorge Quintero,
and his getaway driver and girlfriend, Claudia Martinez,

* Hon. John W. Darrah, District Judge for the Northern
District of Illinois, sitting by designation.

challenge their sentences. Quintero pled guilty to all
four counts in the indictment against him. Despite his
plea agreement, the government declined to recommend
a three-point reduction for acceptance of responsibility
because he perjured himself and obstructed justice.
Quintero argues, however, that a provision in his plea
agreement required the government to recommend
the reduction. Martinez was indicted on three counts
and her case proceeded to trial. She contends that an
erroneous jury instruction and an inaccurate computa-
tion of the Sentencing Guidelines made her sentence
unreasonable. We dismiss Quintero's appeal on waiver
grounds and affirm Martinez's conviction and sentence.

## I. BACKGROUND

On March 1, 2008, Martinez drove Quintero to the Fifth
Third Bank in Lafayette, Indiana. Martinez claims that
Quintero merely requested a ride to the bank to make a
withdrawal—which was accurate in one respect, but a
substantial understatement of what actually ensued.
Instead of parking at the bank like a typical customer,
Martinez parked her van in a Target store parking lot
adjacent to the bank. Quintero entered the bank wearing
a mask, announced that he was robbing the bank,
ordered the bank tellers to load money into his bag,
and discharged his handgun. After grabbing more than
$20,000 in cash, he fled the bank and jumped into the
backseat of Martinez's van—carrying his mask, gun, and
the bag of cash. Shortly thereafter, Lafayette police
officers spotted the vehicle and twice attempted to pull

it over before Martinez led the officers on a high-speed chase. After crashing the van, Martinez attempted to flee but was apprehended.

In the van, police officers found the stolen cash, the mask worn during the robbery, and the gun fired in the bank. On the front passenger seat, next to where Martinez had been sitting, the officers also found a second ski mask, a woman's wig in a purse, and a loaded semi-automatic handgun. Martinez was also dressed in an insulated jumpsuit, which appeared highly unusual given the warm weather that day. Nevertheless, Martinez claims that she was no Bonnie to Quintero's Clyde; rather, she asserts that she was completely unaware of the bank robbery until after the fact, and that she fled because Quintero convinced her that the police were pursuing her for cocaine possession.

On July 2, 2008, a grand jury indicted both Quintero and Martinez. The indictment set forth the following counts: (1) bank robbery by force, violence, or intimidation in violation of 18 U.S.C. §§ 2113(a) and 2; (2) discharge of a firearm in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1), 2113(a), and 2; (3) knowing possession of a firearm and ammunition as an illegal alien in violation of 18 U.S.C. §§ 922(g)(5)(A), 924(a)(2), and 2. The indictment also individually charged Quintero and Martinez, counts 4 and 5 respectively, with unlawful entering and remaining in the United States in violation of 8 U.S.C. § 1325(a). Quintero was indicted on the first four counts; Martinez was indicted on counts one, two, and five.

Quintero entered into a plea agreement on December 9, 2009, agreeing to plead guilty to all counts. The initial presentence investigation report (PSR) provided a base offense level of 20 for counts one and three. The report also added two points because property was taken from a financial institution, one point because the loss exceeded $10,000, and two points because Quintero recklessly created a substantial risk of death or serious bodily injury to another person when he fled from officers. It deducted three points for acceptance of responsibility, resulting in a total offense level of 22 with a criminal history category of I. The report recommended a guidelines range of 41 to 51 months' imprisonment for counts one and three.

The probation office, however, revised the PSR on April 26, 2009, following Martinez's trial. The amended report added two points to Quintero's base offense level for obstruction of justice because Quintero had perjured himself at Martinez's trial, and the revised PSR removed the three-point reduction for acceptance of responsibility. The revised PSR calculated Quintero's total offense level at 27, which resulted in a recommended guidelines range of 70 to 87 months' imprisonment. Count two remained the same.

On June 23, 2009, the district court sentenced Quintero. He was sentenced to 70 months' imprisonment on each of counts one and three, and a term of six months on count four, all to run concurrently. Because count four was a misdemeanor, the court determined that the sentencing guidelines did not apply. *See* U.S.S.G. § 1B1.9. The

court also sentenced Quintero to 120 months' imprisonment on count two, to run consecutively with the sentence imposed for the other counts.

At the conclusion of Martinez's three-day trial and prior to submission of the case to the jury, Martinez objected to the district court's jury instruction regarding accomplice liability. Martinez claimed that the instruction presented an erroneous statement of law and, read in conjunction with all of the final instructions, misled the jury and prejudiced her. The district court overruled the objection. The jury found Martinez guilty of bank robbery and unlawfully remaining in the United States, but not guilty of discharging a firearm.

The probation office then prepared a PSR. Martinez objected to the report's calculation of the guidelines sentence because it included a seven-level enhancement for discharge of a firearm even though she had been acquitted of that charge. The district court sentenced Martinez in accordance with the recommendation in the PSR. The court gave Martinez the lowest-end sentence for count one—121 months—and six months' imprisonment for count four.

## II. ANALYSIS

### A. Quintero

On appeal, Quintero argues that the government breached the terms of the plea agreement by refusing to recommend a reduction in his sentence for acceptance of responsibility and by recommending a two-point

enhancement to the base offense level for obstruction of justice. The district court therefore erred, he argues, by accepting the government's position. He also argues that the district court erred by failing to hold an evidentiary hearing to determine if a substantial breach of his plea agreement occurred. In response, the government argues that Quintero waived his right to appeal in accordance with the plea agreement and, in any event, it did not breach the agreement.

As an initial matter, we address the government's argument that Quintero waived his statutory right to appeal. If we find that the waiver is enforceable, we need not proceed further. We review *de novo* whether a waiver of appellate review contained in a plea agreement should be enforced as a matter of law. *United States v. Chapa*, 602 F.3d 865, 868 (7th Cir. 2010); *Jones v. United States*, 167 F.3d 1142, 1144 (7th Cir. 1999). "It is well-settled that appellate waivers in plea agreements are generally enforceable." *Chapa*, 602 F.3d at 868; *United States v. Woods*, 581 F.3d 531, 534 (7th Cir. 2009). However, this is not an absolute rule, *Chapa*, 602 F.3d at 868 (*citing United States v. Mason*, 343 F.3d 893, 894 (7th Cir. 2003); we will enforce a waiver only if the disputed appeal falls within the general ambit of the waiver, *id.* (*citing United States v. Vega*, 241 F.3d 910, 912 (7th Cir. 2001) (per curiam)).

A plea agreement is a contract and is therefore governed by ordinary contract law principles. *United States v. Patterson*, 576 F.3d 431, 438 (7th Cir. 2009). Accordingly, an appellate waiver is generally valid if it is

made knowingly and voluntarily, *see United States v. Cole*, 569 F.3d 774, 776 (7th Cir. 2009); *United States v. Jemison*, 237 F.3d 911, 917 (7th Cir. 2001); *Jones*, 167 F.3d at 1144, and if the language of the waiver is express and unambiguous, *Chapa*, 602 F.3d at 868. On appeal, "[w]e interpret the terms of the agreement according to the parties' reasonable expectations" and construe any ambiguities in the light most favorable to Quintero. *Woods*, 581 F.3d at 534 (*citing Vega*, 241 F.3d at 912).

We turn first to the plain language of the plea agreement. In pertinent part the agreement states:

> I [Quintero] understand that the law gives a convicted person the right to appeal the conviction and the sentence imposed; I also understand that no one can predict the precise sentence that will be imposed . . . . I expressly waive my right to appeal or to contest my conviction and my sentence . . . to any Court on any ground . . . .

(Quintero's App. at 11.) It is clear that Quintero expressly waived his right to appeal, and there is nothing on the face of the agreement that appears ambiguous in such a way as to indicate that Quintero did not understand the terms to which he agreed.

We also look to the plea colloquy to determine if the district court judge properly informed the defendant that the waiver may preclude his right to appeal. *Woods*, 581 F.3d at 534 (*citing United States v. Woolley*, 123 F.3d 627, 632 (7th Cir. 1997)). In Quintero's case, the district court made it clear that the plea agreement contained the appellate waiver and that the waiver potentially barred

his rights to an appeal. The district court explained, "[I]f you wish to file an appeal . . . for the most part you have waived the rights to an appeal by plea agreement. . . . Do you understand?" (Quintero's Short App. at 26.) After Quintero responded in the affirmative, the court then addressed Quintero's counsel and emphasized the importance of the waiver: "I would suggest to you strongly that you . . . explain to the defendant his rights of appeal . . . and what he has waived . . . ." (*Id*.) We find that the plea agreement and plea colloquy demonstrate that Quintero knew and understood the plea agreement. Accordingly, Quintero made a knowing and voluntary waiver of his right to appeal.

Quintero charges, however, that because the government breached a mandatory provision of the plea agreement, his right to appeal was revived and he is entitled to specific performance of that provision. But Quintero fails to recognize that it was he who breached the plea agreement.

Although there must generally be a "meeting of the minds" on the essential elements of a plea agreement, *see United States v. Barnes*, 83 F.3d 934, 938 (7th Cir. 1996), a prosecutor is not necessarily bound to recommend a reduction in the sentence for acceptance of responsibility, *see United States v. Whitlow*, 287 F.3d 638, 640 (7th Cir. 2002) (holding that the appellate waiver was not abrogated by defendant's claim that the government failed to recommend a reduction in his sentence). Although the government did walk away from its recommendation of a sentence reduction, Quintero's argument turns the sequence of events on its head.

It was Quintero who first broke the terms of the plea agreement when he perjured himself in Martinez's trial and obstructed justice. An obstruction of justice charge almost always necessarily militates against an acceptance of responsibility recommendation by the government and a sentence reduction by the district court. *Whitlow*, 287 F.3d at 639. Further, the plea agreement specifically stated that "the government is not obligated to recommend . . . [an] acceptance of responsibility adjustment if [Quintero] . . . engage[s] in additional criminal conduct . . . ." (Quintero's App. at 10-11.) Quintero's own conduct caused the district court to remove the three-point reduction for acceptance of responsibility and to enhance Quintero's sentence by two points for obstruction of justice.

"A waiver of appeal does not authorize a prosecutor to dishonor his promises . . . ." *Whitlow*, 287 F.3d at 640. But "[u]nless a prosecutor's transgression is so serious that it entitles the defendant to cancel the whole plea agreement, a waiver of appeal must be enforced." *Id*. While we are acutely aware of the limitations of waivers of appeal, *id*. at 642 (Wood, J., concurring) ("[W]e have . . . taken care to respect the limits on [appeal] waivers."), "[o]nly arguments that would nullify the plea itself survive," *United States v. Behrman*, 235 F.3d 1049, 1052 (7th Cir. 2000). In other words, "a waiver stands or falls with the plea bargain of which it is a part." *Nunez v. United States*, 546 F.3d 450, 454 (7th Cir. 2008) (concluding that if the guilty plea stands, so does the waiver of appeal); *see also United States v. Hare*, 269 F.3d 859, 861 (7th Cir. 2001).

As noted earlier, Quintero knowingly and voluntarily waived his right to appeal. The district court properly addressed the waiver and confirmed Quintero's understanding of his rights during the plea colloquy. The fact that the prosecution declined to recommend a reduction following Quintero's perjury in his co-defendant's trial does not negate the entire plea agreement nor the waiver provision. *See Hare*, 269 F.3d at 862 ("Although [the appellant] contends that the prosecutor broke his promise to recommend a lower sentence, the waiver prevents us from considering that contention . . . ."). It would be an absurdity to allow a defendant who obstructs justice to gain the benefit of a plea bargain while escaping the detriment of an appellate waiver. As we said in *United States v. Wenger*, "[e]mpty promises are worthless promises . . . . Defendants must take the bitter with the sweet." 58 F.3d 280, 282, 283 (7th Cir. 1995). This particular point was addressed in *Hare*:

> If the defendant does not keep his promises, the prosecutor is not bound either. This is established for broken agreements to cooperate. A defendant who promises as part of his plea agreement to provide truthful information or testify in some other case, and who does not carry through, forfeits the benefits of the agreement, and the United States is free to reinstate dismissed charges and continue the prosecution.

269 F.3d at 862. Quintero made his own bed by choosing to commit perjury, no matter his alleged intentions, and now he must lie in it. His right to appeal was properly waived.

We pause to note that even assuming arguendo that Quintero's right to appeal was revived, his claim nonetheless fails. Quintero lost any hope of an entitlement to a reduction for acceptance of responsibility when he committed perjury. Quintero argues that although he committed perjury in Martinez's trial, it was because he was attempting to take all the blame for the robbery and shield his girlfriend from any liability. He therefore claims that his perjury was an acceptance of responsibility and did not violate the terms of the plea agreement. Quintero misunderstands what it means to accept responsibility. Testifying falsely to exculpate Martinez is detrimental to the justice process and constitutes obstruction of justice. *United States v. Arambula*, 238 F.3d 865, 870 (7th Cir. 2001). Quintero is therefore presumed under the sentencing guidelines to have denied responsibility. U.S.S.G. § 3E1.1, Application Note 4; *United States v. Larsen*, 909 F.2d 1047, 1049 (7th Cir. 1990). Accordingly, the district court did not err when it found that Quintero was not entitled to a reduction for acceptance of responsibility and was eligible for a two-point enhancement for obstruction of justice.

The district court also did not err when it refused to hold an evidentiary hearing because it was not necessary. The district court had all the evidence before it: the written plea agreement, the transcript of the oral plea agreement, Martinez's trial transcript, and the PSR. The district court had sufficient evidence to conclude that Quintero, not the government, breached the agreement by perjuring himself at Martinez's trial, and his enhancement for obstruction of justice was therefore justified.

*B. Martinez*

Martinez's primary argument on appeal is that on the issue of accomplice liability the district court erred by providing instruction number twenty to the jury over Martinez's objection. Martinez argues that this instruction conflicted with jury instruction number nineteen, and therefore, it was an erroneous statement of the law, it misled the jury, and it ultimately prejudiced her.

We review *de novo* whether jury instructions "fairly and accurately summarize the law," and we will reverse only if the instructions, when viewed in their entirety, so misguided the jury that they led to appellant's prejudice. *United States v. Webber*, 536 F.3d 584, 599 (7th Cir. 2008) (internal quotation marks and alterations omitted).

We begin by looking to the plain language of the two jury instructions regarding accomplice liability. In pertinent part, instruction nineteen provides:

> Any person who knowingly aids . . . the commission of an offense may be found guilty of that offense. That person must knowingly associate with the criminal activity, participate in the activity, and try to make it succeed. . . . A defendant's guilt may be established without proof that the defendant personally performed every act constituting the crime charged.

(Government's Br. at 11, quoting Final Instruction 19.) Jury instruction nineteen represents a typical aiding and abetting jury instruction.

Martinez argues, however, that instruction nineteen was contradicted by instruction twenty, which states:

> If a person knowingly assists in the escape phase of a bank robbery, he or she is Guilty of aiding and abetting bank robbery. This is true even if that person is unaware of the bank robbery until he or she begins assisting in the escape phase of the bank robbery. Driving a get away car is participating in the escape phase of a bank robbery.

(*Id.*, quoting Final Instruction 20.) Despite an absence of case law to support her argument, Martinez claims that it is an incorrect statement of the law that a person is culpable for a bank robbery when she was not aware of the robbery until the "escape phase," and that a person participates in the "escape phase" of the robbery by driving the getaway car without any proof of the person's knowledge that a robbery had, in fact, taken place. In essence, Martinez argues that instruction twenty is in conflict with instruction nineteen, which exculpates a person that provides assistance but has no knowledge of the crime.

Although Martinez's argument that instruction twenty clouded instruction nineteen appears logical when each is read in isolation, the skies clear when the instructions are read as a whole. While instruction nineteen represents a model aiding and abetting instruction, instruction twenty presents the well-established legal proposition that the escape phase of a bank robbery is in fact part of the robbery itself. *See United States v. Wilkins*, 659 F.2d 769, 773 (7th Cir. 1981).

Martinez argues, however, that instruction twenty permitted the jury to convict her without requiring the government to prove that she knowingly assisted in the bank robbery. We agree, however, with the government that the jury instructions were correct statements of the law. Instruction twenty explicitly provided that to be found guilty of aiding and abetting, Martinez must have "knowingly assist[ed] in the escape phase of a bank robbery." Because the escape phase is part and parcel of a bank robbery, knowledge of the bank robbery that comes into being after the robbery but in connection with the getaway is knowledge of the ongoing criminal conduct itself. Therefore, any person that knowingly participates in the escape phase of a bank robbery becomes a principal actor in the robbery. *Wilkens*, 659 F.2d at 773; *see also United States v. Moore*, 936 F.2d 1508, 1526 (7th Cir. 1991).

Jury instruction twenty was thus a correct statement of the law, and it did not conflict with instruction nineteen. Because Martinez knowingly and willfully participated in the escape phase of the bank robbery by driving the car in an obvious "getaway" fashion, and thereby becoming, if she was not already, a principal in the crime, the district court did not err by giving instruction twenty to the jury.

We also note that based on the numerous incriminating facts of this particular case, common sense must prevail as to whether the jury could actually have been misguided by these two instructions when read together. Martinez drove Quintero to the bank in her

van. Instead of parking in the bank parking lot, she parked in a lot adjacent to the bank's lot. When Quintero got out of her van to go into the bank, he carried with him a gun, a mask, and a bag he later used to collect cash. In the front seat of the van next to Martinez, the police found a woman's wig in a purse, a second ski mask, and a second loaded gun. Martinez also wore a jumpsuit in an apparent effort to disguise herself.

After Quintero ran out of the bank and jumped into the van, obviously carrying property obtained from inside the bank, Martinez led the police on a high-speed chase. If Martinez implausibly failed to understand that a robbery was about to occur when Quintero exited the van and went into the bank carrying a gun and wearing a ski mask, she had to know that a robbery had been committed when she elected to drive the getaway car evasively and at high speeds in an attempt to elude police officers. Her participation in the escape phase of the bank robbery was therefore sufficient to convict her of being an accomplice in accordance with jury instructions nineteen and twenty.

Lastly, Martinez contends that her sentence was unreasonable because there was insufficient evidence to support an enhancement of her sentence for discharge of a firearm and that the district court failed to consider mitigating factors. We review Martinez's sentence for reasonableness. *Rita v. United States*, 551 U.S. 338, 341 (2007). While we may provide a presumption of reasonableness for a within-guidelines sentence, *id.* at 350-51, appellate courts are not permitted to apply a presump-

tion of unreasonableness to sentences imposed outside of the recommended guidelines range, *Gall v. United States*, 552 U.S. 38, 51 (2007). We review *de novo* the district court's application of the guidelines, and its findings of fact for clear error. *United States v. Samuels*, 521 F.3d 804, 815 (7th Cir. 2008).

Although the jury acquitted Martinez of count two—discharge of a firearm during the commission of a violent crime—the district court nonetheless followed the recommendation in the PSR to impose a sentence for count one that incorporated an enhancement for the discharge of a firearm. It is well settled that a sentencing court may consider conduct of which a defendant has been acquitted when sentencing. *United States v. Watts*, 519 U.S. 148, 152-53 (1997); *United States v. Price*, 418 F.3d 771, 787-88 (7th Cir. 2005). And while the government must prove guilt beyond a reasonable doubt to the jury, it need only show the charged conduct by a preponderance of the evidence at sentencing. *Watts*, 519 U.S. at 157.

A co-conspirator's reasonably foreseeable actions can be attributed to a co-defendant for the purposes of sentencing. *See* U.S.S.G. § 1B1.3(a)(1)(A) & (B); *United States v. Wallace*, 212 F.3d 1000, 1005 (7th Cir. 2000). Here, the district court was required to look at all relevant conduct surrounding the bank robbery in sentencing Martinez. Taking all of the evidence of events leading up to the robbery, the robbery itself, the escape phase, and the materials later found in the van—including a second loaded handgun—the district court was rea-

sonable in concluding that Quintero's firing of the gun could be attributed to Martinez as an aider and abettor. Martinez's sentencing enhancement for the discharge of a firearm was thus appropriate.

### III. CONCLUSION

Because we find that Quintero's right to appellate review was properly waived, we DISMISS his appeal. We AFFIRM Martinez's conviction and sentence because the district court did not err in giving jury instruction number twenty and the sentence imposed was not unreasonable.