NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 30, 2011
Decided June 21, 2012

**Before**

Daniel A. Manion, *Circuit Judge*

Ann Claire Williams, *Circuit Judge*

John Daniel Tinder, *Circuit Judge*

No. 10-3928

| | |
|---|---|
| United States of America, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| *Plaintiff-Appellee*, | |
| *v.* | No. 08-CR-00947-12 |
| Rigoberto Molina, | **Amy J. St. Eve**, *Judge*. |
| *Defendant-Appellant*. | |

**O R D E R**

A jury convicted Rigoberto Molina on four counts of possession of cocaine with intent to distribute and three counts of using a telephone to assist in a narcotics trafficking violation. Molina appeals, arguing he is entitled to a new trial because the district court improperly instructed the jury and improperly admitted evidence in violation of Federal Rules of Evidence 404(b) and 403. We AFFIRM.

I.

Enrique Sanchez and Misael Osorio, both cocaine dealers in the Chicago area, had been "fronting" (i.e., selling on credit) quantities of cocaine to Rigoberto Molina, who in turn would

sell the cocaine to his own customers and use some of the proceeds to pay his suppliers. Law enforcement officials began an investigation into Osorio, Sanchez, and Molina in July 2007, and acting under a valid warrant, wiretapped Osorio's phone from December 27, 2007 through February 15, 2008, and Sanchez's phone from January 17, 2008 through February 15, 2008. There was a ten-day interruption in the call intercepts, from February 15 through February 25th, 2008, but law enforcement officials were able to bring the wiretap back up and captured calls through June 2008.

Osorio, Sanchez, and Molina were arrested, and Osorio and Sanchez pleaded guilty to various controlled substances offenses. Molina was charged with four counts of possession with intent to distribute cocaine under 21 U.S.C. § 841(a)(1), and three counts of using a telephone to assist in a narcotics trafficking violation under 21 U.S.C. § 843(b). As it turned out, no cocaine was seized from Molina and none was entered into evidence at trial. Prosecutors made their case with recordings from the intercepted calls and the testimony of Osorio and Sanchez. Both dealers testified that they sold cocaine to Molina, and that during the recorded calls with Molina, they used code words to refer to quantities of cocaine: "corner" as nine ounces of cocaine, "half-goat" as a half-kilogram of cocaine, and "car" or "guy" as a full kilogram of cocaine.

The cocaine transactions giving rise to the charges occurred on January 9, January 20, January 28, and in late February 2008. The intercepted calls revealed that on January 9, Osorio called Molina and informed him that his cocaine supplier had arrived.  Lacking transportation, Molina asked Osorio to inspect the drugs for him. Osorio agreed to do so, and picked up the cocaine for Molina and brought it to his residence. Molina received 4½ ounces of cocaine from Osorio, but Molina did not pay Osorio at that time because Osorio was providing drugs to Molina on credit. Osorio and Molina spoke again on January 12, and Molina agreed to pay Osorio $1,000 as partial payment for the 4½ ounces he received (though Molina only paid him $800, as that was all he had on hand).

The second recorded transaction occurred on January 20, when Molina received approximately one quarter-kilogram of cocaine from Sanchez (worth roughly $4,500). After a series of phone calls during which they discussed the transaction, Sanchez drove to Molina's home and delivered the cocaine. Molina did not pay Sanchez for the cocaine, and they discussed payment options in several subsequent phone conversations. On January 28, recordings show that Molina received another quarter-kilogram of cocaine from Sanchez. Initially, Molina called Sanchez and sought 4½ ounces of cocaine for one of his customers, and Sanchez agreed to meet Molina at Molina's house. Sanchez called Molina again when he was near the house and informed Molina that he had mistakenly brought a full quarter-kilogram (9 ounces of cocaine) for Molina. In addition to the recorded phone conversations detailing this transaction, law enforcement officials observed Sanchez parking across the street from Molina's house and Molina getting into Sanchez's vehicle and then exiting it to return to his house. Subsequent recorded conversations included discussions on how Molina would pay Sanchez the money he owed him.

The final charged transaction occurred shortly before February 26. A few days prior to February 26, recordings revealed that Molina had received a half-kilogram of cocaine from Sanchez. Then, in a series of recorded phone calls, Molina and Sanchez discussed how Molina would pay Sanchez for the half-kilogram. Sanchez told Molina to have the money by Thursday (March 6) because Sanchez needed to pay his suppliers. Molina and Sanchez spoke again on Thursday, March 6, at which time Sanchez stated that his suppliers would be arriving soon and that he needed the money from Molina. Molina stated that he would be able to get $500 from one of his customers, but was still attempting to collect the remaining $9,500 from that customer. This frustrated Sanchez, who excoriated Molina for selling cocaine on credit.

Later that same day, Molina called Sanchez again. During this call ("Call 361," the admission of which is now challenged on appeal), Molina and Sanchez discussed Molina's efforts to collect the money he owed to Sanchez. Molina promised that he would get at least $8,000 together for Sanchez and asked for more cocaine. Sanchez and Molina also discussed the total amount of money Molina owed to Sanchez, which by this point was at least $19,000, not including the $8,000 Molina promised to pay him. When describing his collection efforts, Molina stated that a friend told him to "push the dude" and to tell the delinquent customer that "you're gonna get the top guys on him." Molina also later stated that he would get the money from his customer "one way or another."

Eventually, Molina was arrested along with Osorio and Sanchez. A jury convicted Molina of possessing cocaine with the intent to distribute on the four occasions described above (January 9, 20, 28, and late February 2008), and of using the telephone to commit the offenses on January 9, 20, and 28. Molina was sentenced to 70 months' incarceration and three years of supervised release. Molina now appeals his conviction and seeks a new trial on the grounds that the district court improperly instructed the jury and that certain recorded telephone evidence was erroneously admitted at trial.

II.

We first consider whether the district court erred when it instructed the jury that the government was not required to introduce into evidence the controlled substance the defendant was charged with possessing. We review jury instructions de novo to determine if they "fairly and accurately summarize the law," *United States v. Quintero*, 618 F.3d 746, 753 (7th Cir. 2010), and we review the decision to give a particular instruction for an abuse of discretion. *United States v. Tanner*, 628 F.3d 890, 904 (7th Cir. 2010). We will reverse a conviction "only if the instructions, when viewed in their entirety, so misguided the jury that they led to appellant's prejudice." *Quintero*, 618 F.3d at 753.

Molina challenges Instruction 19, which stated: "The government is not required to introduce into evidence at trial the controlled substance allegedly possessed by defendant to sustain a conviction for counts charging possession of a controlled substance with intent to

distribute." During trial, Molina's counsel objected[1] to the instruction on the grounds that it misstated the law. On appeal, Molina acknowledges that it is not a misstatement of law *per se* but rather contends that giving the instruction was an abuse of discretion because the instruction was too broad. He claims it had the potential to mislead or confuse the jury on the government's burden of proof for an essential element of the charged crimes. Specifically, Molina argues that the jury instruction suggested that the government need not prove the identity of the controlled substance beyond a reasonable doubt. Therefore, Instruction 19 incompletely stated the law regarding the government's burden of proof and impermissibly "tipped the scales" in favor of the government.

This argument is incorrect. In prosecutions of offenses involving controlled substances under 21 U.S.C. § 841(a), it is well-settled that the government need not introduce the actual controlled substance into evidence at trial to sustain a conviction for possession of a controlled substance. *United States v. Manganellis*, 864 F.2d 528, 541 (7th Cir. 1988). When the controlled substance is not introduced, the government can prove the identity of the drug by circumstantial evidence, as long as the circumstantial evidence establishes the substance's identity beyond a reasonable doubt. *United States v. Dominguez*, 992 F.2d 678, 681 (7th Cir. 1993).

The jury instructions given by the district court stated the following:

To sustain the charge of possession of a controlled substance (mixtures and substances containing cocaine) with intent to distribute in Counts 2, 4, 6, and 7 of the indictment, the government must prove the following propositions:

First, that the defendant knowingly or intentionally possessed a mixture containing a measurable quantity of cocaine; and

Second, that the defendant possessed the mixture containing a measurable quantity of cocaine with the intent to deliver it to another person.

It does not matter whether the defendant knew the substance was a mixture containing a measurable quantity of cocaine. It is sufficient that the defendant knew that it was some kind of prohibited drug.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty on the count you are considering.

---

[1] The government argues that the defendant failed to properly object to the challenged instruction at trial and therefore did not preserve the objection for appeal. We need not consider this argument, as Molina's appeal fails either way.

> If, on the other hand, you find from your consideration that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty on the count you are considering.

The instructions clearly informed the jury of the elements of possession of a controlled substance under 21 U.S.C. § 841(a), and that those elements must be proven beyond a reasonable doubt. They accurately stated the law and the government's burden of proof. Instruction 19 neither implicitly nor explicitly altered the government's burden of proof—it merely informed the jury (correctly) that the government need not introduce the specific physical evidence at trial to sustain a conviction for possession of a controlled substance. Molina argues that by informing the jury of what the government need not do, the instruction somehow lessened the government's burden of proof or "tipped the scales" in favor of the government. This argument is unconvincing. The instructions, in clear and direct language, informed the jury both before and after Instruction 19 that the government must prove all elements of the charged crime beyond a reasonable doubt. Instruction 19 in no way lessened that burden, and the district court did not abuse its discretion when it gave the instruction.[2]

We next consider whether the district court erred when it admitted Call 361 into evidence. We review evidentiary rulings for abuse of discretion. *Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 759 (7th Cir. 2003). Evidentiary rulings are accorded considerable deference, and "defendants bear a heavy burden in challenging [rulings] on appeal." *Haley v. Gross*, 86 F.3d 630, 645 (7th Cir. 1996). We will reverse a district court's evidentiary ruling "only when the record contains no evidence on which the district court rationally could have based its ruling." *United States v. Gorman*, 613 F.3d 711, 717 (7th Cir. 2010). If we find that the district court abused its discretion in admitting the challenged evidence, we perform a "harmless error" analysis to determine whether the defendant was prejudiced by the error. *United States v. Zapata*, 871 F.2d 616, 622 (7th Cir. 1989).

At trial, Molina objected to the admission of Call 361 on the grounds that it contained "404(b) type evidence" and "other crimes evidence." The government responded that Call 361 contained a discussion regarding payment for the charged cocaine transaction occurring just before February 26, and sought to introduce the recorded conversation as direct evidence of the charged offense. The district court agreed with the government and overruled Molina's objection.

---

[2] Even if we were to find that the district court somehow abused its discretion by giving Instruction 19, any error would not have prejudiced the defendant. The evidence demonstrating that Molina possessed cocaine was overwhelming. Both Osorio and Sanchez testified extensively that they had given cocaine to the defendant on numerous occasions, and the recorded telephone calls corroborated their testimony. Molina and his suppliers repeatedly discussed whether the cocaine was "pretty," "ground," or "cut"; how the cocaine should be packaged; and the various pricing schemes for the cocaine. This evidence supports the jury's conclusion that Molina possessed cocaine beyond a reasonable doubt.

On appeal, Molina argues that Call 361 contains evidence of an uncharged transaction and the call tended to show that Molina had a violent character. Molina asserts that the call should have been excluded under Rules 404(b) and 403 because it served no permissible purpose. Specifically, Molina points to the fact that Call 361 contained a discussion between Molina and Sanchez that related to a different, uncharged transaction, and that the call tended to show Molina's violent character because he discussed using potentially violent means to collect debts from his customers. Molina asserts that, because the district court did not conduct a 404(b) test or give a limiting instruction to the jury, the district court abused its discretion by admitting Call 361.

These arguments are unavailing. Rule 404(b), which bars the introduction of evidence used to prove a defendant's character to show action in conformity with that character, only applies to evidence "of other crimes, wrongs, or acts." Fed. R. Evid. 404(b). Rule 404(b) is inapplicable if the government introduces evidence as direct proof of a charged offense. *United States v. Adams*, 628 F.3d 407, 414 (7th Cir. 2010); *United States v. Alviar*, 573 F.3d 526, 538 (7th Cir. 2009). Here, the district court admitted the evidence as direct proof of the charged offense, specifically the transaction occurring shortly before February 26. In the call, Sanchez and Molina discussed the half-kilogram of cocaine that Sanchez had provided to Molina just prior to February 26, assessed the amount of money Molina owed to Sanchez for that transaction, and they discussed Molina's efforts to collect the debts his customers owed to him so that he could pay Sanchez. Consistent with the government's proffer at trial, the call constituted direct evidence of this cocaine transaction, and "Rule 404(b) is inapplicable where the 'bad acts' alleged are really direct evidence of an essential part of the crime charged." *Alviar*, 573 F.3d at 538 (citations omitted). Even if the call contained evidence of an uncharged crime that could have prejudiced the jury, the district court did not err when it admitted the call into evidence because the call also contained direct evidence of the charged transaction, and "direct evidence of a crime is almost always admissible against a defendant." *Gorman*, 613 F.3d 711, 717 (7th Cir. 2010). Thus, the district court did not abuse its discretion when it did not perform a Rule 404(b) analysis to determine the admissibility of Call 361.

Likewise, the admission of Call 361 did not violate Rule 403, which requires a district court to exclude evidence when the "probative value [of the evidence] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury…." Fed. R. Evid. 403. We have held that "all probative evidence is to some extent prejudicial." *United States v. McKibbins*, 656 F.3d 707, 712 (7th Cir. 2011). Thus, the question is whether the prejudice is "unfair," and the district court "must balance [the] probative value [of the evidence] against unfair prejudice." *Id.* As we noted above, Call 361 was highly probative of the cocaine transaction that had recently transpired, providing evidence that Molina knowingly possessed cocaine and intended to deliver that cocaine to another person. Molina discussed receiving a half-kilogram of cocaine from Sanchez, as well as his attempts to collect money to pay Sanchez. The government had no other calls from Sanchez or Osorio during this period because they switched phones, and this call was the best direct evidence of the transaction available to the government.

Furthermore, Molina's statements to Sanchez that he was contemplating using a threat to collect the debts owed to him by his customers are directly relevant to proving that Molina had already distributed the half-kilogram of cocaine he received from Sanchez for the February 26 transaction. Even if it tended to show that Molina had a violent character, any potential prejudice toward Molina was outweighed by the probative value of the call. *See, e.g.*, *United States v. Calabrese*, 572 F.3d 362, 366-69 (7th Cir. 2009) (ruling that the admission of an audiotape in which the defendant physically assaulted a potential witness and made death threats to him was not unfairly prejudicial under Rule 403). Thus, the district court did not abuse its discretion when it admitted the call into evidence.

Finally, even if we were to find that call 361 was admitted improperly, any error in its admission would be harmless. The Federal Rules of Criminal Procedure mandate that "any error … that does not affect substantial rights must be disregarded." Fed R. Crim. P. 52(a). When we consider "whether an evidentiary error is harmless," we "consider whether, in the mind of the average juror, the prosecution's case would have been 'significantly less persuasive' had the improper evidence been excluded." *United States v. Thornton*, 642 F.3d 599, 605 (7th Cir. 2010) (quoting *United States v. Cooper*, 591 F.3d 582, 590 (7th Cir. 2010)). At Molina's trial, the government presented numerous recordings of phone conversations held between Molina and his suppliers, the extensive corroborating testimony of both of those suppliers, surveillance evidence, and the testimony of law enforcement officers. Even if Call 361 had been excluded, the volume of the evidence against Molina presented by the government at trial was more than sufficient to sustain the jury's finding of guilt, and we cannot say that the government's case would have been "significantly less persuasive" without it.[3]

### III.

The district court did not abuse its discretion or misstate the law when it instructed the jury that the government did not need to introduce into evidence at trial the cocaine Molina was charged with possessing. The instruction correctly stated the applicable law and did not alter the government's burden of proof. Also, the district court did not abuse its discretion when it admitted Call 361 into evidence because it contained direct evidence of the charged offenses and did not violate Rules 404(b) or 403. Even if we were to hold that the district court abused its discretion when it admitted Call 361, any error in doing so would have been harmless. For these reasons, Molina's conviction is AFFIRMED and his request for a new trial is DENIED.

---

[3] Molina also argues that the cumulative impact of the alleged errors in this case merits a new trial. To prevail on a claim of cumulative error, there must be "at least two errors committed in the course of the trial …" that unfairly impacted the jury's deliberation. *United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001). Since we hold that no errors have been committed here, the cumulative error doctrine is inapplicable.